**Waldo G. VAZQUEZ, et al.,
Plaintiffs, Appellants,**

v.

**Carlos LOPEZ–ROSARIO, et al.,
Defendants, Appellees.**

No. 97–1584.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1997.

Decided Jan. 22, 1998.

Harry Anduze Montano, Hato Rey, PR, with whom Raul S. Mariani Franco, San Juan, PR, was on brief, for appellants.

Rafael Cuevas–Kuinlam, Hato Rey, PR, with whom Antonio Cuevas–Delgado and Cuevas, Kuinlam & Bermudez, were on brief, for appellee Carlos Lopez–Rosario.

Jaime Mayol–Bianchi, San Juan, PR, with whom Jose R. Perez–Hernandez and Pierluisi & Mayol–Bianchi, P.S.C., were on brief, for appellee Puerto Rico Marine Management, Inc.

Radames A. Torruella, Hato Rey, PR, with whom Carmencita Velazquez–Marquez, Jorge A. Antongiorgi, San Juan, PR, and McConnell Valdes, Hato Rey, PR, were on

brief, for appellee Puerto Rico Maritime Shipping Authority.

Before LYNCH, Circuit Judge, CYR, Senior Circuit Judge, and DICLERICO, District Judge.*

LYNCH, Circuit Judge.

This case is another in a series of cases arising out of the elections in Puerto Rico in 1992, in which the New Progressive Party (NPP) won power from its rival, the Popular Democratic Party (PDP). During the current decade, plaintiffs in these cases usually have been members of the PDP who complain that the incoming NPP administration has deprived them of their government jobs in violation of their rights under the First Amendment.[1] In this case, plaintiff Waldo G. Vazquez, an NPP supporter, claims his job at a government contractor was eliminated as part of an internal party feud. He sues his employer, its major client (a public corporation), and a member of the client's board under 42 U.S.C. § 1983 (1994).

The district court concluded that Vazquez's evidence, principally his own testimony, amounted to no more than "hearsay upon hearsay" and "rumors, hearsay, gossip, his personal feelings, his intuition and his conclusions," and granted summary judgment for defendants. Vazquez argues that the district court committed error in excluding evidence as hearsay when the statements were admissions by party-opponents. Thus, we explore in some detail the requirements of Fed. R.Evid. 801(d)(2) as to party-opponent admissions, a recurring issue in employment cases.

We agree with Vazquez that some of the conversations which the district court excluded on hearsay grounds are admissions of a party-opponent and should have been considered as part of his case. To win the battle is not necessarily to win the war. Because the evidence Vazquez presents is insufficient to create a genuine issue of material fact in any event, we affirm.

I.

We state the facts in the light most favorable to the party opposing summary judgment, *Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97,98 (1st Cir. 1997), and describe the evidence in some detail.

Waldo Vazquez was employed for many years by Puerto Rico Maritime Management, Inc. (PRMMI), a private corporation that provides management services to the Puerto Rico Marine Shipping Authority (PRMSA), a public corporation created by the Puerto Rico legislature. PRMSA's Governing Board has seven members appointed by the Governor of Puerto Rico, subject to confirmation by the Commonwealth's Senate. *See* 23 L.P.R.A. § 3054 (1994). PRMSA acknowledges it is a government agency, and we have held it is a "political subdivision" of the Commonwealth of Puerto Rico under the National Labor Relations Act. *See Chaparro–Febus v. International Longshoremen Ass'n, Local 1575*, 983 F.2d 325 (1st Cir.1992). At the time of his dismissal from PRMMI in 1993, Vazquez held the title Vice President of Operations, Caribbean Division.

In 1992, a new contract between PRMSA and PRMMI was signed, giving authority to the PRMSA Board over "key personnel" within PRMMI. PRMSA was given the right to dismiss high-level PRMMI employees "for any material breach of its contract by such [PRMMI] key personnel and/or for just cause." Vazquez's position was among those designated "key personnel."

In 1993, PRMSA had accumulated losses in excess of $300 million. Vazquez does not dispute this. On February 24, 1993, the PRMSA Board voted, in light of these high losses, to authorize a reduction-in-force (RIF) of twenty-six employees at PRMMI; eventually at least forty-one employees' jobs were eliminated. Vazquez's position was among those selected for elimination, either directly by the Board or pursuant to its RIF directive. The record is not clear whether Vazquez's position was among those originally selected for elimination by the Board.

---

* Of the District of New Hampshire, sitting by designation.

1. *See, e.g., Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97, 104 n. 8 (1st Cir. 1997) (citing cases).

However, as some evidence supports the conclusion that the Board directly authorized Vazquez's dismissal, we will assume that it did.

In late March 1993, Steve Schulein, a high-level PRMMI official, informed Vazquez over breakfast at the Ambassador Plaza Hotel in Puerto Rico that his position was going to be eliminated at the beginning of April. According to Vazquez's testimony, Schulein told Vazquez that he did not understand why Vazquez was to be dismissed, and that the elimination of his position had not been part of the original reorganization plan submitted to the PRMSA Board. Schulein said that he understood that the decision came from a member of the PRMSA Board. This conversation took place in the period when the other PRMMI employees were also being let go.

The next day, Vazquez called Manuel Luis del Valle, Chairman of the Governing Board of PRMSA, in order to ascertain why his position had been selected for elimination in the Board's new plans for PRMMI's reorganization. Vazquez told Del Valle that his dismissal "was an injustice and a persecution." Vazquez argued that similar employees had not been eliminated, and that he had rejected the company's early retirement program two years before because he needed the salary and felt he still had much to offer the company. Del Valle promised he would help Vazquez fight his proposed dismissal, because, according to Vazquez, Del Valle "also understood that it was an injustice."

On April 2, 1993, Vazquez received a letter informing him that "due to [PRMMI's] current financial condition you will be laid off. . . ."

Vazquez continued his inquiries and protests about his dismissal. At some later time, Del Valle told Vazquez of a conversation Del Valle had with Carlos Lopez–Rosario, a member of the PRMSA Board. According to Vazquez, Del Valle told him that Lopez had told Del Valle that "the problem" was that Vazquez had "political differences" with Lopez. The record is unclear when the conversation between Lopez and Del Valle supposedly took place or whether it had anything to do with Vazquez's dismissal. Del Valle's comments also confirmed what Vazquez calls "hallway gossip" that Lopez disliked Vazquez.

Vazquez suspected that these "political differences" stemmed from the NPP's gubernatorial primary in 1992. Vazquez had supported the losing candidate, Carlos Romero–Barcelo ("Romero"), now the Commonwealth's Resident Commissioner in Washington, while Lopez had supported the winner, Pedro Rosello, now the Governor of Puerto Rico.

Vazquez speculated that this disagreement must have motivated his dismissal. He remembered a conversation with Lopez a few years earlier at an NPP activity in the home of a prominent supporter. Vazquez had expressed his preference for Romero as a gubernatorial candidate and Lopez had disagreed, arguing for Rosello. Vazquez also speculated that Lopez might be retaliating against him for the work of Vazquez's wife in organizing a women's group to support Romero in a political campaign almost two decades earlier.

According to Vazquez, Miguel Rossy, PRMMI's President, confirmed in a conversation at a local restaurant that Vazquez's position was not included in the original reorganization plan and that the decision came from an unnamed PRMSA Board member, "[s]omebody who doesn't . . . like you, who is opposed to Carlos [Romero's] people." Vazquez took this unnamed person to be Lopez.

On several occasions, Vazquez also asked both Commissioner Romero and Governor Rosello personally to intervene and reverse the decision, citing his long record of service with PRMMI. The Governor told Vazquez that he would have to handle the issue with the PRMSA Board himself. According to Vazquez, at some point Ricardo Gonzalez, a PRMSA Board member, told Vazquez that he had tried to get the decision reversed, but that "the pressure was too strong." Gonzalez did not explain what he meant by "pressure," or who was applying pressure.

Finally, in May 1993, Vazquez met with Lopez personally in Lopez's office at PRMSA. Vazquez asked Lopez whether

what Del Valle had told him about "political differences" was true. Lopez replied, according to Vazquez, "I made some remarks . . . those remarks to Manuel Luis [del Valle] over a Coca–Cola or a cup of coffee, but Manuel Luis shouldn't have told you." There is no indication when such remarks were made.

## II.

■ Vazquez filed suit against PRMSA, PRMMI and Lopez, alleging that his dismissal was retaliation for his support of Romero, in violation of his First Amendment[2] rights of political association under *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).[3] Following discovery, the district court granted motions for summary judgment for PRMMI and Lopez, and a few days later, granted summary judgment sua sponte for PRMSA, which had not joined the other defendants' motions. On appeal, Vazquez claims that the district court erred in excluding the conversations he relates in his deposition on hearsay grounds, because most of the statements, he says, were admissible under Fed.R.Evid. 801(d)(2) as admissions of a party-opponent.

Vazquez claims that the conversations he describes were sufficient evidence to permit his case to survive summary judgment. He also claims that the district court abused its discretion in entering summary judgment sua sponte for PRMSA.

## III.

■ Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment. *See* Fed. R.Civ.P. 56(e); *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1110 (1st Cir.1986). We review the district court's decision to exclude such evidence for abuse of discretion. *See General Elec. Co. v. Joiner,* —— U.S. ——, ——, 118 S.Ct. 512, 516–17, 139 L.Ed.2d 508 (1997); *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 97–98 (1st Cir.1997). Once we determine what evidence can properly be considered, we review the district court's decision to grant summary judgment de novo. *Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 98 (1st Cir.1997).

### A. *Hearsay and Party–Opponent Admissions*

Fed.R.Evid. 801(c) defines hearsay generally as "a statement, other than one made by

**2.** We note that, under plaintiff's theory, the state action doctrine poses no bar to his assertion of a First Amendment claim against PRMSA and Lopez, although he was employed at a private company. *Cf. Yeo v. Town of Lexington,* 131 F.3d 241, 248–49 (1st Cir.1997) (en banc) ("If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."). For summary judgment purposes, we take it that Vazquez's dismissal came at the insistence of the Board of Governors of a state agency, an agency which had retained the power in its contract to demand the dismissal of "key personnel." Furthermore, although plaintiff was not a government employee, he was dismissed, at the government's insistence, from his job with a government contractor. The First Amendment forbids the government not only from interfering with the associational rights of its employees, but also from using its power over contractors to punish its political opponents. *See Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *O'Hare Truck Serv., Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). Moreover, because his claim fails against the state actors, it fails against the private or semi-private actors who did the state's bidding.

**3.** Under *Elrod* and *Branti,* the government may not condition employment on membership in the party in power, unless party affiliation is an appropriate requirement for the position. *See Branti,* 445 U.S. at 517–18, 100 S.Ct. at 1294–95. Vazquez's claim is that his support of Romero prompted his dismissal by a member of a rival faction within the same party.

It is unclear from the summary judgment record whether Vazquez's support of Romero should be analyzed under the categorical rule for political affiliation of *Elrod* and *Branti* or under the balancing test for political speech by government employees established in *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See, e.g., Rodriguez Rodriguez v. Munoz Munoz,* 808 F.2d 138, 143–47 (1st Cir.1986) (contrasting a claim based on "affiliation with a particular political group" and one based on active partisan activity, speech or running for office). The parties and the district court assumed the *Elrod–Branti* test applied. We determine that summary judgment was appropriate even under the more demanding *Elrod–Branti* standard, and therefore do not reach the issue of which line of First Amendment precedent should apply.

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." All of the conversations which Vazquez relates fit this general definition, as they are offered to show that Lopez was behind Vazquez's dismissal, and that his motive was to retaliate for Vazquez's support of Romero. Indeed, most of the conversations are hearsay within hearsay.

Vazquez argues, however, that these conversations are nonetheless admissible because the Federal Rules of Evidence define admissions by a party-opponent as "not hearsay." *See* Fed.R.Evid. 801(d)(2). Vazquez argues that the comments by high PRMSA and PRMMI officials, acting within the scope of their agency or employment, are admissible under this rule. In addition, Vazquez properly notes, there is no objection to "hearsay within hearsay" if each link in the chain is admissible under an exception to the hearsay rules or is not defined as hearsay. *See* Fed.R.Evid. 805. Careful scrutiny of the comments on which Vazquez relies is necessary to evaluate this argument.

■ For a statement to be an admission under Rule 801(d)(2), the statement must be made by a party, or by a party's agent or servant within the scope of the agency or employment. *See, e.g., Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1093–94 (1st Cir. 1995); *Union Mutual Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 6–8 (1st Cir.1986).[4] Each link in the chain must be admissible,

either because it is an admission and thus not hearsay or under some other hearsay exception.

■ The conversations that Vazquez himself describes as "hallway gossip" were properly excluded as hearsay. Although Vazquez identifies some of the individuals who related the rumor that Lopez disliked him, nothing in the record identifies the sources of this information. While there may be a controversy over whether admissions must be based on personal knowledge, *see Brookover v. Mary Hitchcock Mem. Hosp.*, 893 F.2d 411, 414–16 (1st Cir.1990) (canvassing the controversy), unattributed statements repeated by party-opponents cannot be admissible. As the original declarant is unknown, it is impossible to determine whether the original declarant also fits within the party-opponent definition, and thus the exclusion of such office gossip was proper. *See, e.g., Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1001–02 (3rd Cir.1988) (excluding such unattributed hearsay when repeated by party-opponent); *Cedeck v. Hamiltonian Fed. Sav. & Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir.1977) ("That part of [the party-opponent's] statement which contains a reiteration of what someone told him is not admissible as an admission by [a] party-opponent since the author of the statement is unknown.")[5]

■ Likewise, the exclusion as hearsay of the statement of Miguel Rossy, PRMMI's

---

4. Fed.R.Evid. 801(d)(2) provides that a statement is "not hearsay" if:

The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The other exceptions are not relevant to the statements offered in this case, which can more easily fit the exceptions mentioned in the text.

5. We distinguish cases where the statements are not offered as proof that they were in fact made, but rather as general examples of unlawful com-

pany policy. *See, e.g., Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1215–16 (3rd Cir.1995) (finding admissible supervisor's statement, repeated to ADEA plaintiff, that company "frowned on" older workers); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1053 (7th Cir.1990) (admitting supervisor's statements about "concerns" and "feelings" of home office as direct statements of the company's attitude or policy rather than second-hand repetitions, inadmissible because unattributed). Vazquez does not claim that PRMSA had a policy or custom of persecuting Romero followers, but merely that one Board member, Lopez, did so in his case. *See Abrams*, 50 F.3d at 1216 (contrasting a "specific declaration made [concerning] a particular employment decision ... offered for its truth," which was inadmissible if from an unknown declarant, with a supervisor's "opinion regarding company policy," which was admissible).

president, that Vazquez's dismissal was at the behest of "someone [at PRMSA] who doesn't like you, who is opposed to Carlos [Romero's] people," was within the district court's discretion. Even assuming dubitante that Rossy's description of the statement is enough to identify the declarant as Lopez, or at least as a Board member and thus an agent of PRMSA, Rossy was the President of PRMMI, not PRMSA. This breaks the link in the hearsay chain. There is no evidence that Rossy was authorized to speak for PRMSA's Board, and thus his statement cannot be considered within the scope of his agency as an officer of PRMMI. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091–92 (9th Cir.1990) (no abuse of discretion in exclusion of double-hearsay statement which was related to plaintiff by an agent of a different employer where there was "no evidence that [the person who related the alleged statement] had any authority to make [such] admissions"); *cf. Woodman*, 51 F.3d at 1094 (examining record to determine whether manager was acting within scope of her employment); *Miles v. M.N.C. Corp.*, 750 F.2d 867, 874 (11th Cir.1985) (same).

■ However, many of the other conversations on which Vazquez relies should not have been excluded as hearsay. Del Valle's conversation with Vazquez relating the "problem" of Lopez's "political differences" with Vazquez fits within the Rule 801(d)(2) exception. The statement concerning political differences was made by a party (Lopez) and related by Del Valle, who was Chairman of the PRMSA Board and thus the agent of PRMSA, a party. The district court abused its discretion by excluding this conversation as "hearsay," if that is indeed what it did.

■ Similarly, the statement of Gonzalez, a PRMSA Board member, that "the pressure was too strong" to reverse the decision is not hearsay, as Gonzalez was clearly an agent of PRMSA. Thus, Gonzalez's statement can properly be used to prove the truth of the matter asserted, i.e., that he felt under "pressure" not to reverse the PRMSA decision. However, Gonzalez's statement cannot be used as "hearsay within hearsay" to prove that Lopez had urged the Board to stand by a decision to dismiss Vazquez. Gonzalez

does not identify the person applying "pressure," and the statement of an unidentified declarant is hearsay.

■ Finally, Vazquez's description of his confrontation with Lopez is plainly not hearsay. Lopez is a party, and his direct admission that he had made some informal comments to Del Valle that he did not want Vazquez to hear is not hearsay. Again, Lopez's statement can be used to prove the truth of the matter asserted, i.e., that he made comments to Del Valle that he did not want repeated to Vazquez.

■ The Lopez statement, however, is insufficient to establish an "adoptive admission" that Lopez acknowledged that he had been responsible for Vazquez's dismissal and that it was in retaliation for Vazquez's support of Romero, as Vazquez argues. *See* Fed.R.Evid. 801(d)(2)(B) (defining as "not hearsay" "a statement of which the party has manifested an adoption or belief in its truth"). The burden is on Vazquez to show that the circumstances surrounding the conversation with Lopez demonstrate that Lopez manifested a belief in the accusation of retaliation. *See Ricciardi v. Children's Hosp. Med. Ctr.*, 811 F.2d 18, 24 (1st Cir.1987). "In all cases, the burden is on the proponent to convince the judge that in the circumstances of the case a failure to respond is so unnatural that it supports the inference that the party acquiesced in the statement." *Id.* (quoting J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(B)[01], at 801–202 n.15 (1985) (internal quotation marks and alterations omitted)).

The record, however, reveals that Vazquez, at most, accused Lopez of making statements to Del Valle, and Lopez responded by admitting that he had made "some remarks." Vazquez does not say that he accused Lopez directly of retaliating against him, only that he accused him of making statements to Del Valle about their political differences. It would hardly be unnatural to fail to respond to an accusation that Vazquez does not claim to have made.

## B. Summary Judgment on the Motive for Vazquez's Dismissal

In order to forestall summary judgment, Vazquez must have demonstrated that his support of Romero was at least a "motivating factor" in the Board's decision to dismiss him. *See Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138, 143 (1st Cir. 1986). Vazquez must "point[ ] to [admissible] evidence in the record which, if credited, would permit a rational fact finder to conclude that [his dismissal] stemmed from a politically based discriminatory animus," *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir. 1996) (quoting *Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994) (internal quotation marks and alterations omitted)), rather than for economic reasons. "Without more, [Vazquez's] unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment." *Id.*

The record reveals that Vazquez felt his dismissal was unfair and that many of his friends agreed with him. He had worked for many years at PRMMI, climbing the corporate ladder, had rejected early retirement two years before and was then dismissed. The conversations he relates contain many statements of support from PRMSA and PRMMI employees who sympathized with him. However, "[m]erely juxtaposing a protected characteristic—[Lopez's] politics—with the fact plaintiff was treated unfairly is not enough to state a constitutional claim." *Acosta–Orozco*, 132 F.3d 97, 101 (quoting *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 58 (1st Cir.1990) (internal quotation marks omitted)).

Instead, Vazquez must point to evidence which shows that Lopez singled out Vazquez's position, which was not included in the original reorganization plan, for elimination and that he did so to retaliate for Vazquez's support of Romero. Vazquez can point to three conversations to support this theory. First, he can point to Del Valle's comments that "the problem" was Vazquez's "political differences" with Lopez. Second, he can point to Lopez's acknowledgement that he made "some comments" to Del Valle that he did not want Vazquez to hear. Finally, he can note Gonzalez's statement that Gonzalez felt "pressure" not to reverse Vazquez's dismissal.

These comments are insufficient to establish that Lopez engineered Vazquez's dismissal in order to retaliate for Vazquez's support of Romero, and amount to no more than "unsupported and speculative assertions." *LaRou*, 98 F.3d at 661. Even viewing these statements in the light most favorable to Vazquez, no reasonable jury could find that such statements prove by a preponderance of the evidence that Vazquez's support of Romero was a "substantial" or "motivating" factor in the PRMSA Board's decision to include his position in the reorganization. That Vazquez had "political differences" with a single PRMSA Board member at some unidentified time does not establish that the Board or a majority of the Board acquiesced in a plan to eliminate his position in retaliation for those differences. Nor does it establish that "the problem" referred to the elimination of Vazquez's position. Similarly, Gonzalez's statement that he felt "pressure" not to reverse Vazquez's dismissal says nothing about the reason for the pressure. Facing a deficit in excess of $300 million, PRMSA Board members undoubtedly felt pressure to stand by the reorganization plan.

Finally, we find no abuse of discretion in the action of the district court in entering summary judgment sua sponte for PRMSA, following the district court's grant of summary judgment to PRMMI and Lopez. Vazquez had "appropriate notice and a chance to present [his] evidence on the essential elements of [his] claim. . . ." *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir.1996). Vazquez does not identify how his opposition to summary judgment for PRMSA would have differed in any way from his opposition to summary judgment for PRMMI and Lopez.

The judgment of the district court is *affirmed.* Costs to appellees.