Edgardo **GUZMAN–SUAREZ,** Plaintiff,

v.

**MEDICAL CARD SYSTEM, INC.,** Defendant.

**Civil No. 06–1427 (ADC).**

United States District Court, D. Puerto Rico.

Sept. 18, 2008.

Manuel Duran–Rodriguez, Manuel Duran Law Office, San Juan, PR, for Plaintiff.

Rafael Baella–Silva, Baella & Barcelo Law Office, San Juan, PR, for Defendant.

### OPINION AND ORDER

AIDA M. DELGADO–COLÓN, District Judge.

On May 3, 2006, plaintiff, Edgardo Guzmán–Suárez ("plaintiff"), filed this action against defendant, Medical Card System, Inc. ("MCS" or "defendant"), seeking relief for alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* *("ADEA"),* and the following Puerto Rico laws: Law No. 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.;* Law No. 100 of June 30, 1959, 29 L.P.R.A. 146 *et seq.;* and the Libel and Slander Law of February 19, 1902, 32 L.P.R.A. § 3141 *et. seq.* **Docket No. 1.**

Now before the Court is defendant's motion for summary judgment and amended

statement of material undisputed facts,[1] as well as plaintiff's opposition to defendant's motion for summary judgment, opposition to defendant's statement of material undisputed facts and plaintiff's separate statement of additional facts. **Docket Nos. 14, 22, 23, 24, 25, 28.** At issue is whether plaintiff's allegations and proffered evidence support a cause of action for age discrimination under the ADEA. For the reasons set forth below, the Court finds that they do not, and therefore **GRANTS** defendant's motion.

## I. Factual and Procedural Background

Unless otherwise noted, the following relevant facts are derived from the parties' statements of fact. **Docket Nos. 22, 24–2.** Consistent with the summary judgment standard, the Court states the facts in the light most favorable to plaintiff, the non-moving party. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006). Plaintiff either admitted, denied, or qualified each of defendant's proposed material undisputed facts. **Docket No. 24–2.** As permitted by Local Rule 56(c), plaintiff also submitted a separate set of additional facts. *Id.* Defendant, however, did not submit a reply to plaintiff's separate statement of additional facts. Consequently, the Court deems admitted all properly supported facts contained in plaintiff's statement of additional facts. *See* L. Cv. R. 56(e).

### 1. Conversion and Termination

Plaintiff began working for defendant as a Programmer Analyst[2] in the Information and Technology Department ("IT") on April 3, 2000. Plaintiff's Separate Statement of Additional Facts, **Docket No. 24–2** ("PSAF"), at ¶ 1; Defendant's Amended Statement of Material Undisputed Facts, **Docket No. 22** ("DSMUF"), at ¶ 2. At the time he was hired, plaintiff was roughly forty-six (46) years old. PSAF at ¶ 1; DSMUF at ¶ 3. Plaintiff's initial base salary was $45,000.00. DSMUF at ¶ 4; Plaintiff's Counterstatement of Material Facts in Controversy, Statement of Objections, **Docket No. 24–2** ("PSOJ"), at ¶ 4. During plaintiff's tenure, his salary increased to a high of $56,103.55. DSMUF at ¶ 4; PSOJ at ¶ 4.

In or around February of 2005, defendant made the decision to convert its main computer program, "Power MHS"[3], from version 4.6.3 to version 5.0.7 (the "conversion"). DSMUF at ¶ 6; PSOJ at ¶ 6. On February 2, 2005, plaintiff was put in charge of the programming development functions of the conversion, with management retaining control over the planning, scheduling and personnel assignments. DSMUF at ¶ 8; PSOJ at ¶ 8. At that time, Carlos Díaz ("Díaz") was the Development Manager in charge of all programmer analysts. DSMUF at ¶ 9; PSOJ at ¶ 9.

---

**1.** Defendant amended its original statement of material undisputed facts and memorandum in support of its motion for summary judgment on September 11, 2007. **Docket Nos. 22, 23.** Accordingly, the Court will treat these amended pleadings as if originally filed and will treat the previous versions as nullities.

**2.** According to the IT Division Standards and Procedures, a Programmer Analyst is responsible for the following tasks: (1) obtaining all information necessary to complete users requests; (2) retrieving the program and the

data from the production to the development environment; (3) coding and testing the program in the development environment; (4) allowing the system owner to conduct acceptance testing; and (5) documenting the program changes, among others. DSMUF at ¶ 5; *id.* at Ex. 5.

**3.** According to defendant, Power MHS is a computer application that supports its operational processes, including the services provided in accordance with Commonwealth of Puerto Rico's Health Reform Program and other commercial services. DSMUF at ¶ 7.

As the conversion dates neared, defendant's IT Director, Edwin Oquendo ("Oquendo"), instructed plaintiff, amongst others, to implement the conversion. DSMUF at ¶ 10; PSOJ at ¶ 10. The specific instructions for implementing the conversion were included in the installation guide prepared by the provider of Power MHS. DSMUF at ¶ 11; PSOJ at ¶ 10. Said guide was delivered to plaintiff prior to the conversion launch date. DSMUF at ¶ 11. The conversion process was set to be executed in all three regions in which defendant divides its business: Qflex, Commercial and Reforma. DSMUF at ¶ 14; PSOJ at ¶ 14. According to defendant, plaintiff was instructed to execute the conversion of these three regions consecutively. DSMUF at ¶ 14; PSOJ at ¶ 14[4]. On February 16, 2005, Oquendo instructed employees, including plaintiff and Díaz, not to carry out the conversion tasks remotely. DSMUF at ¶ 12; PSOJ at ¶ 12. More specifically, the employees were instructed to carry out all conversion tasks from their onsite computers. DSMUF at ¶ 12; PSOJ at ¶ 12.[5]

Notwithstanding, according to defendant, plaintiff asked on numerous occasions if he could conduct the conversion from home. DSMUF at ¶ 15. All of plaintiff's requests were allegedly met with a denial. DSMUF at ¶¶ 15, 16. Plaintiff, for his part, avers that while he was initially told on February 16, 2005, that he could not conduct the conversion process remotely, he was informed on February 17, 2005, after Díaz met with Ricardo Alegría, Vice–President of Systems and Information, and Gerald López, Assistant Vice–President of Systems and Information, that he could conduct the pre-conversion stage of the conversion remotely. PSOJ at ¶¶ 12, 15, 16; *id.* at Ex. 1. Per these alleged instructions, plaintiff conducted the pre-conversion portion of the process remotely and simultaneously across all three regions. PSOJ at ¶ 17. In addition to the above, plaintiff also created a program called the Controlled Language Program ("CL program"), which included all of the instructions contained in the Power MHS installation guide for the pre-conversion stage, to assist with the conversion. DSMUF at ¶ 19; PSOJ at ¶¶ 18, 19.[6] The CL program was used to assist with the pre-conversion stage of the three regions for the conversion process. PSOJ at ¶¶ 18, 19. According to plaintiff, use of the CL program was authorized by all of his superiors, including, but not limited to, Alegría, López, and Oquendo. *Id.* at ¶ 18; *id.* at Ex. 1, ¶ 24.

Ultimately, the conversion process failed, forcing defendant to re-run the conversion on a later date at a substantial cost. DSMUF at ¶¶ 20, 22, 23, 24; PSOJ at ¶ 23, 24. According to defendant, the actions of plaintiff and Díaz were directly to blame, but plaintiff states that it was the actions of another MSC employee, Nancy Negrón ("Negrón"), then IT Operations manager, which caused the failure. DSMUF at ¶ 21; PSOJ at ¶ ¶ 20, 21. According to plaintiff, the pre-conversion portion of the process was successful. PSOJ at ¶ 20. It was only during the second phase of the conversion of the REFORMA region, when Negrón started running a

---

**4.** Plaintiff, on the other hand, alleges that he was told no such thing. PSOJ at ¶ 14; *Id.* at Ex. 1, ¶ 19.

**5.** The instruction guide for the conversion also recommended that the second step in the three step conversion process ((1) pre-conversion, (2) conversion, (3) post-conversion) be performed from a local terminal. DSMUF at ¶ 13; PSOJ at ¶ 13.

**6.** The conversion was designed as an interactive process in which the computer system would require answers to inquiries when certain conditions arose. DSMUF at ¶ 18.

backup process from the systems console, that the conversion failed. PSOJ at ¶¶ 20, 21, 22. Negrón, who was forty-one (41) years old, was not terminated even though defendant allegedly knew she was the cause of the conversion failure. *Id.* at Ex. 1, ¶¶ 22, 23.

On February 24, 2005, defendant terminated plaintiff and Díaz for allegedly violating the "Major Offenses" provision of the employee handbook. DSMUF at ¶ 26. More specifically, the two were terminated for, according to defendant, deliberately failing to follow the instructions given to them regarding the conversion process. DSMUF at ¶ 27.[7] Plaintiff, for his part, avers that he and Díaz were terminated solely based on their ages—both fifty-one (51) years old on the date of termination, and the oldest employees in the IT department—not because of their actions relating to the conversion. PSAF at ¶¶ 1, 3, 4. Plaintiff was replaced by an employee who was forty-three (43) years old. *Id.* at ¶ 5. Based on the above, plaintiff filed an age discrimination claim with the Puerto Rico Department of Labor's Anti–Discrimination Unit and Equal Employment Opportunity Commission. **Docket No. 1,** at 2. A Right to Sue letter was issued on March 9, 2006, and was received by plaintiff on March 13, 2006. *Id.*

### 2. Pre-conversion Discriminatory Conduct

In 2002, during a meeting between Oquendo, Díaz and plaintiff, after plaintiff expressed his desire to run parallel tests— a normal occurrence—as part of the modifications to MCS custom programs, Oquendo told Díaz that if one was a good programmer, there was no need to run parallel tests. PSAF at ¶ 6. Accordingly, Oquendo ordered Díaz to remove plaintiff as team leader of that particular conversion project. *Id.*

On August 1, 2003, Oquendo, referring to a recently terminated employee over the age of forty (40), and in front of plaintiff and Díaz, stated that "[n]ow I don't have anyone to hit ('Ahora no tengo a quien darle el cantazo')." *Id.* at ¶ 7. A few days after this incident, on August 5, 2003, plaintiff received a memorandum of insubordination. *Id.* at ¶ 8. Said memorandum was later found to be unjustified. *Id.* Further, in March of 2004, plaintiff was "set-up" by Oquendo and Negrón to make it appear as if he was withholding information from them. *Id.* at ¶ 9. Finally, on August 5, 2004, plaintiff was falsely accused by Oquendo of accessing pornographic internet sites on his work computer. *Id.* at 10.

### II. Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.,* 370 F.3d 215, 218 (1st Cir.2004). When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."

---

**7.** Defendant contends that plaintiff committed the following errors: (a) used the versions of the conversion programs he had developed instead of the versions that were in production at MCS' IT center; (b) automatically answered inquiries made by the system via the CL, notwithstanding that the same were intended to be answered interactively by the person executing the conversion tasks; and (c) failed to carry-out the conversion of the three regions consecutively. DSMUF at ¶ 25.

*Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000) (*quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or nonmovant—who would bear the burden of proof on that issue at trial." *Alamo Rodríquez v. Pfizer Pharma.*, 286 F.Supp.2d 144, 151 (D.P.R.2003) (*citing Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir.2001)). An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir.2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value. As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López–Rosario*, 134 F.3d 28, 33 (1st Cir.1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**III. Analysis**

**A. ADEA Claim**

 Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to prevail in a lawsuit under the ADEA, the plaintiff's age must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (insertion in original); *Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 17 (1st Cir.2006).

 When there is no direct evidence of discrimination, the plaintiff may prove his case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Bennett v. Saint–Gobain Corp.*, 507 F.3d 23, 30 (1st Cir.2007). Here, plaintiff has not put forth any direct evidence of age discrimination, *see, e.g., Vesprini v. Shaw Contract Flooring Servs., Inc.*, 315 F.3d 37, 41 (1st Cir. 2002) ("Although ... somewhat murky, the term 'direct evidence' normally contemplates only those 'statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision.'" (emphasis omitted)), therefore the burden-shifting framework applies. Under *McDonnell Douglas*, it is the plaintiff's burden to establish a *prima facie* case of age discrimination. In order to accomplish this, he must adduce evidence: "(I) that he is a member of the protected group; that is, that he was at least forty years of age when dismissed from his employment; (ii) that his job performance met or exceeded his employer's legitimate expectations; (iii) that his employer actually or constructively discharged him; and (iv) that his employer had a continuing need for the services that he had been rendering." *Bennett*, 507 F.3d at 30 (*citing Dávila v. Corporación De Puerto Rico Para La Difusión Públi-*

*ca,* 498 F.3d 9 (1st Cir.2007)). This *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. *See González v. El Día, Inc.,* 304 F.3d 63, 69–70 (1st Cir.2002).

■ Once plaintiff has made out a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its adverse employment action. *See Bennett,* 507 F.3d at 30–31. The defendant's burden at this stage is only a burden of production; the ultimate burden of proof remains always with the plaintiff. *See Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424 (1st Cir.2000). If the defendant is able to meet its burden, "the plaintiff no longer can rest on the initial inference of discrimination but, rather, must show that the defendant's articulated reason is pretextual." *Bennett,* 507 F.3d at 31 (*citing Dávila,* 498 F.3d at 16). " 'At summary judgment, this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age.' " *Id.* (*quoting Dávila,* 498 F.3d at 16); *see also Torrech–Hernández v. Gen. Elec. Co.,* 519 F.3d 41, 47 (1st Cir.2008); *Thomas v. Sears, Roebuck & Co.,* 144 F.3d 31, 33 (1st Cir.1998) ("The plaintiff bears the 'burden of proving that his years were the determinative factor in his discharge, that is,

that he would not have been fired but for his age.' ") (internal citation omitted). *See Torrech–Hernández v. General Electric,* 519 F.3d 41 (1st Cir.2008).

■ In the instant action, while not contested, plaintiff has established a *prima facie* case. First, plaintiff was fifty-one (51) years old at the time he was terminated. Second, he was qualified for his job as a Programmer Analyst, as evidenced by his five (5) years in that position, his 2002 promotion from Programmer Analyst I to Programmer Analyst II, and the yearly raises he received. Third, plaintiff was actually terminated from his job on February 24, 2005. Fourth, plaintiff was replaced by someone who performed essentially the same functions as he had in that role.

■ Since plaintiff has made out a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff. After a thorough review of the record, the Court concludes that—contrary to plaintiff's argument [8]—defendant has met this burden. As the record reflects, defendant has presented evidence, via sworn statements and deposition testimony, that plaintiff was terminated for what defendant perceived to be insubordination. As described above, defendant has put forth evidence that: (1) defendant repeatedly told

---

**8.** Plaintiff's argument is that defendant's basis for terminating him was not reasonably specific or clear and contradictory. In making said argument, plaintiff states, in a somewhat confusing fashion, the following:

> 23. These inconsistencies are enough to defeat summary judgment because an **articulate,** legitimated non-discriminatory reason, has not been asserted by Defendant. At the outset, it is evident that Defendant has not even **articulated** a reason for Plaintiff's termination. Defendant has **alleged** reasons, but it is far from having **articulated** a reason.

> 24. Finally, it must be pointed out that defendant has auto-contested the legitimateness of the reasons asserted. **When defendant recognized that Plaintiff establishes a *Prima Facie* case of age discrimination, it is automatically preventing the court from granting a Summary Judgment on its favor, inasmuch as defendant is conceding existence of controversy of facts as to whether the articulated reason is articulated and legitimated.** This recognition defeated any articulated reason for the adverse employment actions.

**Docket No. 25,** at ¶¶ 23–24 (emphasis in original).

plaintiff, along with other employees, that the conversion tasks assigned to them needed to be conducted onsite; (2) defendant instructed plaintiff that the conversion of the three regions—Qflex, Commercial and Reforma—needed to be conducted consecutively, not simultaneously; (3) plaintiff continued to request permission to conduct the conversion process from home, but was repeatedly told he could not perform the tasks remotely; (4) notwithstanding, plaintiff conducted the conversion from home and ran it simultaneously; (5) in order to avoid the interactive nature of the conversion program, plaintiff developed the CL program that executed the commands prompted by the conversion, automatically answering the systems inquiries, thereby defeating the conversions interactive process; (6) the CL program was set to ignore and continue the conversion when the system prompted error messages; (7) the actions of plaintiff, and his supervisor, were either the direct cause or played an integral role in the failure of the conversion; (8) as a result of the failed conversion, defendant had to rerun the conversion at a later date at a great expense and economic burden to the company. Based upon the foregoing, defendant terminated plaintiff's employment. Accordingly, defendant has articulated a legitimate and nondiscriminatory reason for terminating plaintiff.

Since defendant has met his burden, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times

with the plaintiff." *Id.* (citation and internal quotation marks omitted). At this point, a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citations and internal quotation marks omitted). However, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case' and inferences properly drawn therefrom … on the issue of whether defendant's explanation is pretextual.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Ultimately, the question is not whether the stated explanation of defendant was false, but whether its discriminatory animus was the real reason behind the termination. *See Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 45 (1st Cir.2002).

Here, plaintiff's theory of discrimination is that defendant created, or took advantage of, a situation where they could terminate plaintiff's employment. The proof, plaintiff says, is the following: (1) defendant treated plaintiff differently than other employees as evidence by the fact that (a) Alegría and López were negligent in not stopping plaintiff from performing the conversion remotely, yet were not terminated, (b) the CL program, created and used by plaintiff had, been authorized by Alegría, López, and Oquendo, and (c) the employee who was actually responsible for the failure of the conversion was not terminated [9]; (2) defendant's stated reasons for terminating plaintiff were pretextual as evidenced by the fact that (a) plaintiff was never told he needed to submit the conversion simultaneously, and it was never mentioned as a justification for his termination,

9. This argument is not put forth in plaintiff's motion in opposition to defendant's motion 9 on for summary judgment, but is averred to in other portions of the record.

and (b) defendant did not mention plaintiff's use of the CL program as a reason for his termination at the time he was terminated; (3) that circumstantial evidence shows that defendant had a discriminatory animus towards older employees.

### 1. Disparate Treatment Arguments

■■ Discriminatory animus can be inferred from the mere fact of disparate treatment. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In order to show disparate treatment, a plaintiff must show that he/she was treated differently from "persons situated similarly in all relevant aspects." *Molloy v. Blanchard,* 115 F.3d 86, 91 (1st Cir.1997) (internal citation and quotation omitted). In order to show "similarity", plaintiff must show that the other employees had similar "performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations." *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir.1994) (internal citation and quotation omitted). Plaintiff fails to make such a showing.

■ Plaintiff's first contention is that he was subject to different treatment than other employees because he and Díaz, the two oldest employees at MCS, were the only ones terminated for the failed conversion even though Alegría and López "allegedly" knew that they intended to conduct the conversion from home, but failed to stop them. This argument may not be considered by the Court. As the record reflects, this argument is based entirely upon hearsay evidence which may not be considered at the summary judgment stage, *see Vázquez,* 134 F.3d at 33 ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment"), and is not based on plaintiff's personal knowledge, *see Velázquez–García v. Horizon Lines of Puerto Rico, Inc.,* 473 F.3d 11, 18 (1st Cir.2007) (noting evidence of the non-movant must be based on personal knowledge). Assuming, *arguendo,* that the Court were to consider this argument, it fails to see how it shows that defendant was treated differently than other similarly situated employees. Plaintiff and Díaz were the ones who conducted the conversion remotely, not Alegría or López. To imply that Alegría or López should have been terminated because they allegedly knew that plaintiff and Díaz intended to implement the conversion remotely, and if they were not, defendant was discriminating against him based on age, is untenable.

Plaintiff's second piece of evidence allegedly showing disparate treatment is that he was the only person terminated for use of the CL program, even though it had been authorized by Alegría, López and Oquendo. The problem with this argument is that plaintiff does not set forth specific facts to support his contention that use of the CL program during the conversion was approved by defendant, or his supervisors. Plaintiff only asserts that he had been permitted to use the CL program in the past. *See* **Docket No. 24–3,** ¶ 21; *see also Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 6 (1st Cir. 1994) (a party resisting summary judgment may not rest on mere allegations or denials, but must identify and allege specific facts showing a genuine issue for trial). Nonetheless, even if use of the CL program had been permitted during the conversion, plaintiff fails to set forth facts establishing that defendant permitted the CL program to "ignore and continue executing the Conversion when the system prompted error messages, defeating ... the interactive design of the process...." **Docket No. 22–9.** Here, it is not so much that plaintiff created the CL program that caused the alleged problems—even though defendant raises issues with that as well—

it is that the program allegedly ignored commands and continued to implement the conversion even though there were problems and errors. Accordingly, plaintiff's proffered evidence, that he was permitted to create the CL program, falls short of contradicting or calling into question defendant's main complaint, that the use of CL program in the conversion process played a role in its failure.

Plaintiff's third and final piece of evidence allegedly showing disparate treatment is that the person who supposedly caused the conversion to fail, Negrón, was not terminated. Again, plaintiff fails to set forth facts showing that Negrón was similarly situated to plaintiff—*i.e.*, that she disregarded instructions, but was not terminated-yet was treated differently than him because of her age (she was also a member of the protected class at the time of the alleged events). Instead, plaintiff simply states that Negrón was the true cause of the conversion failure, and that she was younger than he. While this evidence does not necessarily show a discriminatory animus towards older employees, it does, if taken in a light most favorable to plaintiff, cast a shadow of doubt over one of the stated reasons for plaintiff's termination—that his actions were the reason for the conversions failure.[10]

### 2. Pretext Arguments

 Next, plaintiff launches a serious of attacks aimed at showing that defendant's proffered reasons for terminating him are "full of weaknesses, implausibili-ties, inconsistencies, incoherencies [sic], and contradictions." **Docket No. 25,** at 11.

Plaintiff's first argument is that he was never told he needed to submit the pre-conversion phase of the conversion simultaneously, and that it was never mentioned as a justification for his termination. Here, while defendant has offered evidence that plaintiff was repeatedly counseled not to submit the conversion process simultaneously, plaintiff denies in his sworn statement that he was ever told such a thing. As set forth above, at the summary judgment stage, this Court must accept plaintiff's evidence that he was never told that he could not submit the pre-conversion phase of the conversion simultaneously. *See Velázquez–García,* 473 F.3d at 18. However, plaintiff's second contention, that his failure to implement the conversion simultaneously was never mentioned as a basis for his termination, is without merit, as this was specifically mentioned as a basis for his termination in Oquendo's February 22, 2005, letter. **Docket No. 28,** Ex. 1, at 4 ("This action constituted the fourth error, since a conversion process was executed without having finished the one that was being executed ... a procedure contradicted by ... the developer of the system...").

Next, plaintiff argues that one of defendant's alleged reasons for terminating him—using the CL program to complete the conversion—was not mentioned as a reason for his termination at the time he was actually terminated, and is, therefore, a pretext for their discriminatory animus.

10. Plaintiff further alleges in his sworn statement—but does not argue in his brief—that "the instructions regarding the submission of the conversion from my home (remote) was changed on the afternoon of February 17, 2005, when" Díaz met with Alegría and López. Putting aside that plaintiff's statement regarding the conversation between Díaz, Alegría and López is hearsay (*Vázquez,* 134 F.3d at 33 ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment")), the facts stated therein are not based on personal knowledge and are therefore insufficient to establish a triable issue of fact so as to withstand a motion for summary judgment. *See Velázquez–García,* 473 F.3d at 18.

While plaintiff may be correct in his assertion that he was never specifically told that his use of the CL program was one of the reasons for his termination, and the Court will assume as much for the purpose of summary judgment, defendant has put forth evidence to support its contention that it terminated plaintiff for his general conduct, which defendant termed insubordination, during the conversion process. **Docket No. 28–2** (letter recommending the dismissal of plaintiff, dated February 22, 2005, setting forth a list of alleged errors committed by plaintiff during the conversion process). Accordingly, even if this Court were to consider the CL program explanation as having been "fabricated" to bolster defendant's other contentions, that in and of itself does not discredit the other nondiscriminatory reasons set forth by defendant. Moreover, while it may sometimes be wise to explain each and every reason supporting the termination of an employee, it is not required.

### 3. Past Conduct Evidencing Discriminatory Animus

■ Finally, plaintiff puts forth circumstantial evidence of past conduct which allegedly shows that defendant held discriminatory animus towards plaintiff because of his age. This evidence, which encompasses a number of different situations and scenarios, consists of the following: (1) during a meeting held in Oquendo's office in 2002, Oquendo questioned whether plaintiff was a good programmer because he wanted to run "parallel tests" as part of a program modification, and had him removed as the team leader of a project; (2) on August 1, 2003, Oquendo stated, in front of plaintiff and in reference to a terminated employee that was over the age of forty (40), that "now I don't have anyone to hit"; (3) on August 5, 2003, plaintiff received a memorandum of insubordination that ultimately proved to be unjustified; (4) on March 4, 2004, Oquendo

tried to "fabricate" a reason to discharge plaintiff and on August 5, 2004, Oquendo allegedly falsely accused plaintiff of accessing pornographic web sites; (5) plaintiff and Díaz were the two oldest employees—both over the age of fifty (50)—at the time of their discharge; and (6) plaintiff was replaced by a forty-three (43) year old employee.

■ After reviewing each of the above acts, the Court concludes that no rational fact finder could, when looking at the events in the context in which they occurred, conclude that they were based on a discriminatory animus towards older employees. While a discriminatory comment made by a decision-maker may be probative of pretext, *see Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir.2000), ambiguous, isolated remarks are not. *See Lehman v. Purdential Ins. Co. of America*, 74 F.3d 323, 329 (1st Cir.1996). Here, plaintiff's first two arguments amount to nothing more than ambiguous, isolated remarks that are in no way probative to plaintiff's pretext argument. With regards to the third and fourth arguments, the allegedly false accusations leveled against plaintiff by Oquendo, there is nothing about these situations which would indicate a discriminatory animus, and therefore they are not probative of the question at hand.

With regards to the fifth and sixth arguments, plaintiff's "statistical data"—that plaintiff and Díaz were the only two individuals over the age of fifty (50) when they were terminated, and that plaintiff was replaced by a younger employee—likewise fail to raise an inference of discriminatory intent on the part of defendant. First, of the sixteen (16) employees who worked at MCS between 2004 and 2006, not including plaintiff and Díaz, eight (8) were over the age of forty (40) by August 29, 2006. Second, simply pointing to one event—the fir-

ing of two fifty-one (51) year olds—without so much as addressing the fact that roughly fifty percent of the remaining work force were members of the protected class, and trying to extrapolate a discriminatory animus from it, without more, renders plaintiff's evidence inadequate to rebut defendant's stated reasons for terminating plaintiff. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 848 (1st Cir.1993) ("[S]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee."). Further, plaintiff attempts to draw a negative inference from the fact that he was replaced by an employee who was only forty-three (43) years old at the time he replaced plaintiff. However, the fact that plaintiff's replacement was younger than plaintiff—though a member of the same protected class—is of little consequence here, given the complete paucity of evidence plaintiff has provided supporting an inference of discrimination. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Because this Court cannot conclude that plaintiff "lost out" because of his age, it is immaterial that plaintiff was replaced by someone younger than himself.

Taking all of the above into consideration, the question is whether the facts that create a slight suggestion of pretext present here, absent other evidence from which discrimination can be inferred, meets plaintiff's ultimate burden. After reviewing the entire record, and considering all of plaintiff's arguments, the Court finds that it cannot. The purported inaccuracies in defendant's basis for terminating plaintiff do not create a compelling picture of a cover-up on the part of defendant so as to permit a trier of fact, without more, to infer that the real reason behind plaintiff's termination was based on dis-

criminatory animus. First, none of the purported inaccuracies relate to plaintiff's age. Second, plaintiff's circumstantial evidence consists of facts and events that, in their totality, are not sufficiently probative of age discrimination to permit a reasonable fact finder to conclude that plaintiff's termination was motivated by discriminatory animus. *See Domínguez–Cruz*, 202 F.3d at 430–31 (once plaintiff makes out a *prima facie* case and defendant meets its burden of production, "the focus [at summary judgment] should be on the ultimate issue: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the termination of the plaintiff's employment was motivated by age discrimination") (citations and internal quotation marks omitted). Accordingly, the Court does not believe that a rational inference of age discrimination can be drawn in this case.

## B. Pendent Jurisdiction

In light of the above, and since the federal claim has been dismissed, and no other grounds for jurisdiction exists, the Court declines to exercise pendent jurisdiction over plaintiff's remaining state law claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating "if the federal claims are dismissed before trial, ... the state law claims should be dismissed as well.").

Accordingly, plaintiff's claims brought pursuant to Puerto Rico law are **DISMISSED WITHOUT PREJUDICE.**

## IV. Conclusion

Based on the foregoing, defendant's motion for summary judgment (**Docket No. 14**) is **GRANTED.** Accordingly, plaintiff's ADEA claim is **DISMISSED WITH PREJUDICE,** and the claims brought pursuant to Puerto Rico law are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**