Argued and submitted January 29, reversed and remanded November 12, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LUCILLE ROSE NAVAIE,
*Defendant-Appellant.*

Washington County Circuit Court
C102728CR; A152206

362 P3d 710

Erik M. Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment of conviction of one count of first-degree encouraging child sexual abuse (Count 1), ORS 163.684,[1] and eight counts of second-degree encouraging child sexual abuse (Counts 2 through 9), ORS 163.686.[2] The court also found defendant in contempt of court, and it added a conviction for contempt to the judgment. Asserting four assignments of error, defendant argues that the trial court erred by (1) excluding proffered defense expert testimony about her psychological traits, (2) admitting, over her hearsay objections, evidence that one of the computer file folders that contained child pornography was labeled with her name, (3) denying her motion for judgment of acquittal on one of the counts of second-degree encouraging child sexual abuse, and (4) entering a judgment of "conviction" for contempt rather than a judgment finding her in contempt of court.

We address each of the assignments and conclude as follows: First, as the state concedes, the trial court erred by excluding testimony about defendant's psychological traits by defendant's expert witness; accordingly, we reverse and remand for a new trial. Second, the trial court did not err in admitting, as an admission of a party opponent, the evidence that a computer folder was labeled "Piper's Stuff." Third, the trial court did not err in denying defendant's motion for judgment of acquittal on Count 8, based on the photograph at issue in that count. Fourth, as the state also concedes,

---

[1] As relevant here, a person commits the crime of encouraging child sexual abuse in the first degree if the person

"[k]nowingly *** duplicates *** a visual recording of sexually explicit conduct involving a child *** and *** [k]nows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

ORS 163.684(1).

[2] As relevant here, a person commits the crime of encouraging child sexual abuse in the second degree if the person

"[k]nowingly possesses or controls *** a visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person *** and *** [k]nows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

ORS 163.686(1).

the trial court erred by entering a judgment of conviction for contempt; on remand, the court shall enter a judgment reflecting that the court found defendant in contempt.

## I. BACKGROUND

To set the context, we initially provide background facts leading up to the state's charges against defendant. We set out additional facts, as pertinent, when discussing individual assignments of error.

The state charged defendant after her husband, Matthew Navaie (Navaie), a registered sex offender, told police that he possessed child pornography on a computer at the residence that he shared with defendant, their son, defendant's mother, and his own mother.[3] Other adults stayed at the home from time to time. The police seized the home computer with Navaie's consent. Navaie was "cooperative" and "forthcoming" with police. He showed them several file locations on the computer where he had stored sexually explicit images of children, all within a folder labeled "Matt." Navaie referred to the images as "his pictures" and told police that he had downloaded all of them the previous month, specifying that "he had * * * right-clicked the mouse, and clicked 'Save As.'" Navaie also had a "lengthy conversation" with the arresting detective, in which Navaie openly discussed his sexual attraction to young children. Navaie did not indicate that defendant was involved with the child pornography.

Defendant, however, repeatedly stated that the child pornography was hers. When police interviewed defendant while executing a search warrant of the home, defendant stated that the child pornography belonged to both her and Navaie and that they viewed the images together. Defendant's mother-in-law, Rose, testified that, after Navaie's arrest, defendant was "extremely anxious and emotionally losing it." Rose posted bail for her son, but, when she told defendant that he deserved to be incarcerated for possessing child pornography, defendant responded that she had downloaded the pictures.

---

[3] Navaie made that admission after being arrested for taking "upskirt" photos of women, without their knowledge, at a public place.

Defendant made similar admissions to a Department of Human Services (DHS) caseworker, Hundahl. On the basis of Navaie's arrest for encouraging child sex abuse, Hundahl initiated a child abuse investigation concerning Navaie and defendant's infant son. As soon as Hundahl raised the issue of child pornography during her interview of defendant and Navaie, defendant stated that Navaie had not downloaded any child pornography and that it was "all hers." Defendant also told Hundahl that she "had been watching a lot of [the television show] 'Law and Order' *** in order to research [Navaie's] defense." She said that she downloaded around 20 child pornography pictures per week from various websites. Defendant stated that she would look at the images with Navaie. According to Hundahl's testimony, defendant did not provide "any specificity at all related to where the files were downloaded, when they were downloaded, or what websites they were downloaded from." In reference to the charges against Navaie, defendant also stated that she could "not believe that *** Navaie would do something so stupid," but that she "would stay with him throughout this."

Police detective Brooks performed a forensic examination of the hard drive in the seized home computer. According to Brooks, the computer had one user account. There were several electronic folders saved on the "desktop." One was labeled "Matt" and another was labeled "Piper's Stuff." Defendant's nickname is Piper. Police discovered several sexually explicit images of children in the folder labeled "Matt" or in subfolders within that folder. Those images were the bases for Counts 2 through 9 of the indictment brought against defendant. Police found one sexually explicit image of a child within a subfolder labeled "Our Girls" in the "Piper's Stuff" folder. That image was the basis for Count 1.

## II. EXCLUSION OF TESTIMONY BY DEFENDANT'S EXPERT

At trial, defendant's defense was that the child pornography images found on the seized computer actually belonged to her husband and that, to aid him, she had falsely confessed to downloading the pictures. In defendant's first assignment of error, she challenges the exclusion of testimony by her expert witness.

We begin with the facts relevant to that assignment of error. Before trial, the state moved to exclude testimony by Dr. Grounds, a clinical and forensic psychologist who had evaluated defendant for likelihood of recidivism and "psychological and cognitive factors relevant to an understanding of [defendant's] behavior related to the * * * offense." The state anticipated that Grounds would testify that, in her opinion, defendant's various mental conditions shed light on her inculpatory statements. The state argued that Grounds's testimony would be inadmissible because it was improper vouching as to defendant's credibility; hearsay, to the extent that it relied on outside research; and unfairly prejudicial without physical corroboration under *State v. Southard*, 347 Or 127, 142, 218 P3d 104 (2009). As to its *Southard* theory, the state argued that the jury would unduly rely on Grounds's opinion as to defendant's credibility and, therefore, there was a high risk that the testimony would be unfairly prejudicial.[4]

In response to that argument, defendant asserted that the evidence was not vouching and that she was entitled to establish her psychological condition at the time that she made the inculpatory statements. The trial court ruled that Grounds could testify that defendant suffers from a personality disorder and could describe the traits of people with such a personality disorder.

At trial, defendant called Grounds to testify. Grounds testified that she and a doctoral candidate under her supervision had conducted various assessments of defendant. Once Grounds began to testify about the reliability of the methodology she had used in evaluating defendant, the state objected for a lack of foundation, and the court sustained the objection. Then the court excused the jury.

Outside the presence of the jury, the trial court explained that it believed Grounds's testimony was different

---

[4] *Southard* concerned whether a scientific expert can opine at trial that a child has been sexually abused, based solely on the expert's interview with the child. *See* 347 Or at 142. The *Southard* court concluded that, in that case, OEC 403 rendered the expert testimony inadmissible because a factfinder could easily infer from the interview itself whether the child had been sexually abused, and, therefore, the testimony had little probative value but was likely to be highly prejudicial because the jury would tend to overvalue it. *See id.* at 140-42.

from what defense counsel had described when the court first ruled on the state's motion to exclude the testimony. The court expressed concern that, due to time limitations, Grounds had formed only provisional rather than firm diagnoses. As a result of questioning by the state in aid of objection and follow-up questions by defense counsel, Grounds stated other opinions about defendant's immaturity, passivity, and submissiveness, all personality traits that the testing evidence supported, independent of the provisional diagnosis that defendant had a personality disorder. After the trial court heard the testimony and argument, the court excluded Grounds's testimony on the ground that she had made only a "provisional" rather than a "firm" diagnosis that defendant had a personality disorder not otherwise specified, listing traits of dependent, avoidant, and borderline personality disorders, and so the testimony lacked a proper foundation.

On appeal, the state concedes that the trial court erred by excluding the psychologist's testimony concerning defendant's personality traits. We agree. The evidence was relevant to and supports defendant's defense that she confessed falsely, and Grounds explained that she need not have arrived at a "firm" diagnosis to provide the testimony concerning defendant's personality traits that defendant sought to present at trial. There was no contradictory evidence on that point.

But the state does not concede that the error requires a remand for a new trial. The state asserts that, even though the court's basis for excluding the testimony was wrong, we should remand only for the trial court to address the state's alternative argument that the evidence should have been excluded under OEC 403. Defendant responds that the trial court already implicitly rejected the state's OEC 403 argument when it rejected the state's *Southard* objection and that, regardless, the appropriate disposition in a case such as this one is to reverse and remand for a new trial. *See State v. Davis*, 336 Or 19, 27, 35, 77 P3d 1111 (2003) (reversing and remanding for a new trial when the trial court did not exercise its discretion to conduct OEC 403 balancing and instead erroneously excluded, on other grounds, testimony proffered by the defendant).

We reject the state's suggested disposition, which is based on the premise that the trial court never considered the state's objection based on OEC 403 and should be given an opportunity to do so on remand (and then, perhaps, its ruling to exclude the evidence would be the same and no retrial would be necessary). Regardless of the legal merits of that argument, an issue we do not decide, its factual premise is incorrect. The court ruled that it would admit the evidence, in the face of the state's objection to Grounds's testimony based on an argument that the evidence was more unfairly prejudicial than probative under OEC 403. Functionally, the state argued that the evidence was inadmissible under OEC 403. Thus, we agree with defendant that the trial court implicitly rejected the state's argument that the evidence was inadmissible under OEC 403. The state has not articulated any other argument to support its position that a limited remand is appropriate.

The trial court erred in excluding defendant's expert testimony. Accordingly, we reverse and remand for a new trial.

## III. COMPUTER FOLDER LABEL

In defendant's second assignment of error, she argues that the trial court erred when it admitted evidence, over her hearsay objections, that one of the computer folders containing child pornography was labeled "Piper's Stuff." We reach the issue because it is likely to occur on retrial.

A. *Additional Facts*

The hearsay issue first arose before trial, when defendant moved *in limine* to exclude from the trial any evidence of the fact that the computer folder containing the photograph leading to the charge in Count 1 bore the label "Piper's Stuff." Defendant argued that the folder name was hearsay, because the state intended to use it as an assertive statement to prove that the contents of the folder belonged to her, and that the folder name was not otherwise admissible as circumstantial evidence of defendant's possession of the folder's contents. Defendant also argued that the state could not prove by a preponderance of the evidence that defendant

created the folder name, given that her husband was facing similar charges and shared the computer with defendant. In defendant's view, therefore, the folder name was not admissible as an admission of a party opponent.

The state responded that the folder name was an admission of a party opponent, as corroborated by defendant's own statements to multiple witnesses that she had downloaded child pornography to the computer and that she and her husband "would use that together." The trial court denied defendant's motion without elaboration.

Defendant reasserted her hearsay objection multiple times when the state elicited testimony from Detective Brooks at trial. By the time that Brooks took the stand, Hundahl, the DHS caseworker, had testified that defendant had stated that all of the pornography on the shared computer was hers and that she downloaded approximately 20 child pornography images per week. In addition, the police officer who had seized the computer and later searched defendant's home had testified that defendant had told him that the child pornography on the computer belonged jointly to her and her husband.

Brooks was called to testify about the contents of the computer. Brooks explained that he had made a forensic copy of the hard drive from defendant and Navaie's desktop computer and then recovered the images that were the subject of the indictment. Brooks explained that the computer used a Microsoft Windows operating system and that he had found child pornography in two folders on the computer's virtual desktop. Defendant objected based on hearsay when the prosecutor asked, "What were the names of those folders?" The trial court overruled her objection, and Brooks stated the names of the folders. The state then offered into evidence screenshot images of the computer desktop containing the "Matt" and "Piper's Stuff" folders, as well as screenshot images of subfolders within those folders. Defendant objected to that evidence twice, based on hearsay, and the trial court again overruled those objections. Brooks went on to testify that the "Piper's Stuff" folder was a "user controlled folder, meaning somebody had to *** type in the name of it."

## B. *Nonhearsay Admission of a Party Opponent*

As earlier noted, the parties took opposing positions regarding whether the "Piper's Stuff" label was a hearsay "statement," as defendant contended, or a nonhearsay admission of a party opponent, as the state contended. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). But "[a] statement is not hearsay if *** [t]he statement is offered against a party and is *** [t]hat party's own statement." OEC 801(4)(b)(A). That is so even when the party's statement is offered to prove the truth of the matter asserted. *See* Legislative Commentary to OEC 801(4), *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 801.03[2], Art VIII (6th ed 2013) ("Paragraph (b) changes Oregon law with regard to admissions by a party opponent. An admission is presently considered to be hearsay, but is admissible under an exception to the hearsay rule. Under paragraph (b) an admission is not hearsay."). It follows that the folder name was admissible, regardless of whether it met the other elements of the hearsay definition, if defendant made it and it was offered against her.

We conclude that the computer folder's label, "Piper's Stuff," was admissible as a party opponent's admission, as this case was litigated. Therefore, we do not decide whether the label was a "statement" within the meaning of the hearsay definition.

As the plain text of OEC 801(4)(b)(A) indicates, a statement is admissible as a party opponent's admission only if it was made by the party against whom it is offered. That gives rise to the question whether the trial court or the jury determines that the party opponent made the statement under OEC 104, pertaining to who decides preliminary questions. As relevant here, OEC 104 provides:

"(1) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not

bound by the rules of evidence except those with respect to privileges.

"(2)  When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Thus, either the trial court makes that factual determination before admitting the statement under OEC 104(1), applying a preponderance of the evidence standard, *State v. Carlson*, 311 Or 201, 209, 808 P2d 1002 (1991), or else the jury makes that determination, under OEC 104(2) and OEC 901, pertaining to authentication or identification, after the trial court determines that there is sufficient evidence to support a finding that the party opponent made the statement. There is no Oregon case on this precise question. *Cf. Carlson*, 311 Or at 208 (concluding that whether a party has adopted a statement through conduct, such that the statement is admissible as a party-opponent admission under OEC 801(4)(b)(B), is a preliminary question of fact under OEC 104(1)); *State v. Park*, 140 Or App 507, 511, 511 n 2, 916 P2d 334, *rev den*, 323 Or 690 (1996) (distinguishing *Carlson* and holding that whether the defendant wrote a letter found at a residence that did not belong to him was "a question of conditional relevancy under OEC 104(2)" and not a preliminary question of fact under OEC 104(1)).

In this case, the parties have never disputed that the trial court should make the determination. Defendant argued to the trial court that the state could not meet its burden to prove "by a preponderance of the evidence who created that file name," given Navaie's joint ownership and use of the computer with defendant. Although neither defendant nor the prosecutor specified that the court was obliged to rule on a preliminary question under OEC 104(1), that was the thrust of defendant's argument before the court on her motion *in limine*. On appeal, defendant relies expressly on OEC 104(1) and argues that the trial court erred in determining as a preliminary fact that defendant made the "Piper's Stuff" label. For its part, the state does not dispute that OEC 104(1) applies and argues instead that the trial court made the correct determination. Given how the parties

litigated the issue before the trial court and how they present the issue on appeal, we assume, without deciding, that OEC 104(1) applied and determine whether the trial court erred when it determined the preliminary question whether defendant made the label.

In a challenge to the court's factual determinations under OEC 104(1), we "view the record consistent[ly] with the trial court's ruling * * *, accepting reasonable inferences and reasonable credibility choices that the trial judge could have made." *Carlson*, 311 Or at 214. Whether the evidence was sufficient to support the trial court's finding on a preliminary question of fact is a question of law. *See id.*; *State v. Thoma*, 313 Or 268, 276, 834 P2d 1020 (1992) ("If the evidence in the record supports the trial court's ruling [on a preliminary question of fact under OEC 104(1)], taking into account the standard of proof, the ruling will not be disturbed on appeal.").

Here, the trial court implicitly found at the hearing on defendant's motion *in limine* that defendant created the folder label, which was a question of fact preliminary to a ruling on whether the label was nonhearsay as a party-opponent admission. The state argued that the label was an admission by defendant. The trial court denied defendant's motion *in limine* in response to that argument. Therefore, we infer that the trial court determined under OEC 104(1) that defendant created the folder, naming it "Piper's Stuff"—*i.e.*, that defendant was the declarant.

On appeal, defendant contends that, to introduce an admission of a party-declarant, the proponent must make a foundational showing that "the testifying witness observed the declarant make the statement." Defendant argues that the evidence established that the declarant of "Piper's Stuff" was unknown and to assume that she had made the label was to engage in speculation:

> "No witness observed defendant create the label—there was no evidence about the circumstances of the label's making. Although defendant admitted having downloaded child pornography, she did not admit that she created the label, or that she placed images in the 'Piper's Stuff' directory. Defendant was not the only person who used the

computer. Her husband, among others, used it. Defendant's husband admitted that he downloaded child pornography to the computer. The state did not present evidence that ruled out defendant's husband—or anyone—as the author of the label. Therefore, it was speculative to infer from this record that defendant authored the label 'Piper's Stuff.' The label was the statement of an unknown declarant, offered for its truth."

Thus, in defendant's view, the foundation necessary for the trial court to admit the evidence as her admission was lacking.

Defendant did not provide, and we have not identified, authority supporting her proposition that a witness must observe the party opponent make the statement at issue. Indeed, in making its preliminary fact determination, a trial court "is not bound by the rules of evidence except those with respect to privileges." OEC 104(1). Defendant relies on two authorities, neither of which we find compelling as support for her position.

Defendant's first authority, Edward J. Imwinkelried, *Evidentiary Foundations* § 10.03[2][c], 419 (8th ed 2012), is a treatise that contains sample lines of questioning to establish evidentiary foundations at trial. It states that, to establish a foundation for a party-opponent admission in a criminal case, the prosecutor must establish, *inter alia*, that (1) "[t]he witness heard a declarant make a statement" and (2) "[t]he witness identifies the declarant as the present accused." *Id.*

That excerpt describes a typical approach to establish a foundation for a party-opponent admission in a criminal case, but it does not suggest that a proper foundation *requires* a witness who personally observed the declarant make the statement. On the contrary, it is entirely permissible for a trial court to consider circumstantial evidence to establish the existence of a preliminary question of fact under OEC 104(1). *See Carlson*, 311 Or at 213-14 (trial court could not have reasonably inferred that the defendant intended to adopt his wife's statement, because of evidence that he "hung his head and shook [it] back and forth" upon hearing the statement, in addition to his testimony that

he did not intend to adopt the statement); *Dept. of Human Services v. J. G.*, 258 Or App 118, 123-24, 308 P3d 296 (2013) (observing in the context of OEC 803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment, that "[i]t is well established that, as with any other foundational fact, the declarant's motivation must be determined on a case-by-case basis by reference to the circumstances under which those statements were made"). Therefore, in ruling on defendant's hearsay objection, the trial court properly considered circumstantial evidence that defendant had created the folder label.

Defendant's second authority, *Vazquez v. Lopez-Rosario*, 134 F3d 28, 34 (1st Cir 1998), although not controlling in any event, is also inapposite. *Vazquez* involved hearsay embedded within hearsay. In that case, the plaintiff claimed that he had been wrongfully dismissed from his employment as retaliation for his political affiliations. He sought to admit evidence of "hallway gossip" that one of the defendants, Lopez, disliked him, and that his position had been eliminated as a result. The First Circuit excluded the hallway gossip as hearsay, because, although the plaintiff identified people who had told him of the gossip, *no* evidence in the record identified the *original* speakers in those conversations—*i.e.*, the persons who started the rumors. Therefore, it was impossible to know if Lopez or another defendant had been the original declarant. And, therefore, it was impossible to establish that the hallway gossip was the admission of a party opponent. *Id.* Those are not the facts in this case, because, as we next explain, evidence in the record supports a reasonable inference that defendant was the original declarant.

Before trial, the state represented to the trial court that the evidence would show that "defendant admitted to DHS caseworkers, * * * law enforcement, * * * other friends and family members that she was * * * using that computer to download child pornography from the Internet, and it went [to the folders labeled] 'Piper's Stuff' [and] 'Matt's Stuff.'" The state further represented that defendant had admitted to the police to using the computer with her husband and viewing the child pornography with him. Defendant did not

object to that presentation of what the evidence would show. Based on that view of the evidence, the trial court could have reasonably believed that defendant was regularly downloading child pornography and, therefore, the trial court could have reasonably inferred that defendant had created the "Piper's Stuff" folder to organize it.

The record established at trial supported the trial court's finding that defendant created the folder. The facts at the time of the trial court's final ruling on defendant's hearsay objection were no different than the facts discussed at the time of the court's ruling on defendant's motion *in limine*. The record included defendant's statements to Hundahl that all of the child pornography on the computer was hers and that she regularly downloaded child pornography to the computer. The record also included defendant's statements to a police officer that she and her husband jointly controlled the child pornography on the computer. A different factfinder might have drawn different inferences from those facts, but the trial court's inference that defendant created the "Piper's Stuff" folder to organize her child pornography was reasonable. As a matter of law, the evidence in the record was sufficient to support the trial court's finding that defendant more likely than not was the declarant. Accordingly, the trial court did not err in admitting evidence of the folder label over defendant's hearsay objection as an admission of a party opponent.

## IV.  MOTION FOR JUDGMENT OF ACQUITTAL

In defendant's third assignment of error, she assigns error to the trial court's denial of her motion for judgment of acquittal, made at the close of the state's evidence, on Count 8, one of the counts of second-degree encouraging child sexual abuse. She argued that the photo at issue in that count, which had been introduced into evidence, did not depict "sexually explicit conduct" within the meaning of ORS 163.686(1), the second-degree encouraging child sexual abuse statute. The trial court denied defendant's motion. On appeal, defendant generally advances that same argument, specifying that (1) as a matter of law, the photograph is not a "[l]ewd exhibition" and (2) as a factual matter, the photograph does not display the girl's "sexual or other intimate

parts," as "sexually explicit conduct" is further defined at ORS 163.665(3)(f).

On appeal from a denial of a motion for judgment of acquittal, "[o]ur task is to determine whether a reasonable factfinder, viewing the evidence in the light most favorable to the state, could find that the state had proven every essential element of the crime beyond a reasonable doubt." *State v. Mross*, 274 Or App 302, 306, 360 P3d 670 (2015). "The state may rely on circumstantial evidence and reasonable inferences flowing from that evidence to establish any element of the charged crimes." *Id.* Here, the element of the crime at issue is whether the photograph was a visual recording of sexually explicit conduct.

As noted, a person commits the crime of second-degree encouraging child sexual abuse if the person "[k]nowingly possesses or controls, or knowingly accesses with the intent to view, a visual recording of *sexually explicit conduct* involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person." ORS 163.686(1)(a)(A)(i) (emphasis added). "Sexually explicit conduct" means, as relevant to this appeal, a "[l]ewd exhibition of sexual or other intimate parts" of a person. ORS 163.665(3)(f).

The statute does not further define "lewd exhibition," but we have construed it to mean an "'exhibition with the intent of stimulating the lust or sexual desires of the person who views it.'" *Mross*, 274 Or App at 306 (quoting *State v. Meyer*, 120 Or App 319, 326, 852 P2d 879 (1993)). Defendant advances her interpretation that a "lewd exhibition" encompasses only photos that are "clearly and unambiguously sexual in nature" and depict a "child's genitals" on "public display." We recently rejected that interpretation in *Mross*, 274 Or App at 306, and held that whether a photograph depicts a "lewd exhibition" depends upon the circumstances of the photograph's creation.[5] The state must prove that the photograph was "taken with the intention of

---

[5] The defendant in *Mross* proposed an interpretation of "lewd exhibition" substantially similar to the interpretation that defendant advances in this case. Although we did not expressly confront the defendant's statutory construction arguments in *Mross*, we implicitly rejected them in our holding.

arousing the sexual desire of people who view" it. *Id.* When the only evidence of the photographer's intent is the photograph itself, the question on appeal is whether the photograph permits a reasonable inference that the photographer intended the photograph to arouse sexual desire in viewers. *Id.* at 307.

Here, a rational factfinder could reasonably infer, from the photograph itself, that the photographer intended to arouse sexual desire in viewers. The photograph depicts a young girl wearing a tank top and pink shorts, posed on a rock wall outside. Her legs are spread, with her right foot propped on the wall, and the photograph was shot from below, so a viewer can see up the left leg of her shorts. She does not appear to be wearing underwear, and the photograph shows her pubic area and inner thigh. The photograph is closely cropped, with the girl's body as the sole subject. The photograph is well-lit, high-resolution, and clearly in focus, and it appears to be a posed portrait. Those aspects of the photograph support a reasonable inference that the photographer had sexually suggestive intent. Further, although the girl's genitals are partially covered, a rational factfinder could find that the photograph depicts her genitals, which are "sexual * * * parts" under ORS 163.665(3)(f).

Therefore, we conclude that a rational factfinder could find that the state met its burden to prove that the photo was "sexually explicit conduct" within the meaning of ORS 163.686(1). Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal.

## V. CONTEMPT

Defendant's fourth assignment of error challenges the trial court's entry of a judgment of "conviction" for contempt. The state concedes that the trial court erred, and we accept that concession. *See, e.g., State v. Reynolds,* 239 Or App 313, 316, 243 P3d 496 (2010) (acknowledging that "contempt of court is not a crime" and, therefore, does not result in a judgment of conviction). On remand, the trial court shall enter a judgment to reflect that the court found defendant in contempt of court. *State v. Buchanan,* 265 Or App 612, 613, 336 P3d 542 (2014).

## VI. CONCLUSION

In summary, we conclude that the trial court erred when it granted the state's motion *in limine* excluding Grounds's testimony and when it entered a judgment of "conviction" for contempt. The trial court did not err in denying defendant's motion *in limine* to exclude the "Piper's Stuff" folder and in overruling her hearsay objections to that evidence in trial, or in denying defendant's motion for judgment of acquittal on one count of second-degree encouraging child sexual abuse. We reverse and remand for a new trial, and, on remand, the court shall enter a judgment to reflect that it found defendant in contempt.

Reversed and remanded.