Argued and submitted June 5, 2023, convictions on Counts 1 through 4 reversed, remanded for resentencing, otherwise affirmed September 13, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID LEE CANNON,
*Defendant-Appellant.*

Lincoln County Circuit Court
18CR08044; A176436

537 P3d 182

Defendant appeals from a judgment convicting him of two counts of first-degree encouraging child sexual abuse (Counts 1 and 3), ORS 163.684, two counts of second-degree encouraging child sexual abuse (Counts 2 and 4), ORS 163.686, and one count of bribe giving (Count 11), ORS 162.015, raising 11 assignments of error. In his first and second assignments of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal on Counts 1 through 4 because the images those counts related to did not depict lewd exhibitions of sexual or other intimate parts and, therefore, did not show "sexually explicit conduct involving a child" as required under ORS 163.684 and ORS 163.686. *Held*: Applying the Court of Appeal's recent decision in *State v. Parra-Sanchez*, 324 Or App 712, 527 P3d 1008 (2023), and considering the objective elements of the images in light of that decision and the Dost factors, the court agreed that the state failed to present legally sufficient evidence that the two images in question were "objectively lewd" or "salacious or focused on sex." *Parra-Sanchez*, 324 Or App at 718, 721. Therefore, the images did not depict "[l]ewd exhibition[s] of sexual or other intimate parts" constituting "sexually explicit conduct involving a child," and the trial court erred in denying defendant's motion for a judgment of acquittal on Counts 1 through 4 relating to those images. That conclusion was dispositive and obviated the need to consider defendant's other assignments.

Convictions on Counts 1 through 4 reversed; remanded for resentencing; otherwise affirmed.

Thomas O. Branford, Senior Judge.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Convictions on Counts 1 through 4 reversed; remanded for resentencing; otherwise affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment convicting him of two counts of first-degree encouraging child sexual abuse (Counts 1 and 3), ORS 163.684, two counts of second-degree encouraging child sexual abuse (Counts 2 and 4), ORS 163.686, and one count of bribe giving (Count 11), ORS 162.015.[1] Defendant received sentences of life imprisonment without the possibility of parole on Counts 1 through 4. Although defendant raises 11 assignments of error in total, we only address his first and second assignments of error, in which he contends that the trial court erred when it denied his motion for judgment of acquittal on Counts 1 through 4. Applying our recent decision in *State v. Parra-Sanchez*, 324 Or App 712, 527 P3d 1008 (2023), we agree that the state failed to present legally sufficient evidence that the two images in question depicted "[l]ewd exhibition[s] of sexual or other intimate parts" constituting "sexually explicit conduct involving a child."[2] ORS 163.665(3)(f); ORS 163.684; ORS 163.686. That conclusion is dispositive and obviates the need to consider defendant's other assignments.[3] Thus, we reverse defendant's convictions on Counts 1 through 4 and remand for resentencing on the remaining bribe giving count.

On review of the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state and evaluate whether a rational trier of fact could have found the essential elements of the crime beyond

___

[1] Defendant does not raise any assignments of error that concern the bribe giving conviction, and thus we do not review that conviction. The state dismissed Counts 5 and 6 during trial. The jury could not reach a verdict on Counts 7 through 10, and the state ultimately dismissed those counts as well.

[2] Defendant presents other arguments in support of those assignments of error, but we need not consider them due to our conclusion that the images in question did not constitute sexually explicit conduct involving a child.

[3] In defendant's third through ninth assignments of error, he asserts that the trial court erred in admitting evidence regarding a partial watermark present on Exhibits 40 and 42, in admitting evidence of defendant's prior sexual abuse convictions as well as the facts and circumstances of those convictions, and in admitting a postcard defendant had written to Governor Kate Brown. Because we conclude that the trial court erred in denying defendant's motion for judgment of acquittal on Counts 1 through 4, we need not consider those assignments of error. Likewise, we need not consider defendant's tenth and eleventh assignments of error, which assert alleged sentencing errors relevant to those counts.

a reasonable doubt. *State v. Bates*, 304 Or App 732, 733, 472 P3d 768 (2020). We recount the relevant facts in accordance with that standard.

This case originated when defendant purchased a laptop computer from a pawn shop in Newport and returned it two weeks later. During the shop's routine process of "wiping" the computer for resale, they discovered several images of children in no or little clothing. A shop employee reported the images to the Newport Police Department. The discovery of those images ultimately resulted in a warrant for defendant's arrest and his indictment for the charges described above.

Before considering the evidence admitted at trial and the specific content of the images at issue, we briefly recount the legal framework applicable to first- and second-degree encouraging child sexual abuse. As relevant here,

"(1)   A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A)   Knowingly *** duplicates *** a visual recording of sexually explicit conduct involving a child ***; [and]

"* * * * *

"(b)   Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

ORS 163.684(1). Additionally, as relevant here,

"(1)   A person commits the crime of encouraging child sexual abuse in the second degree if the person:

"(a)(A)(i)   Knowingly possesses *** a visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person; [and]

"* * * * *

"(B)   Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse[.]"

ORS 163.686(1)(a). ORS 163.665 further defines several of the key terms used in those statutes. As relevant here, it

defines "[c]hild abuse" as "conduct that constitutes, or would constitute if committed in this state, a crime in which the victim is a child." ORS 163.665(2). It also defines "[s]exually explicit conduct" in the following way:

> "(3)  'Sexually explicit conduct' means *actual or simulated*:
>
> "(a)   Sexual intercourse or deviant sexual intercourse;
>
> "(b)   Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;
>
> "(c)   Penetration of the vagina or rectum by any object other than as part of a medical diagnosis or treatment or as part of a personal hygiene practice;
>
> "(d)   Masturbation;
>
> "(e)   Sadistic or masochistic abuse; or
>
> "(f)   *Lewd exhibition of sexual or other intimate parts*."

ORS 163.665(3) (emphases added). Here, the state contended that the images depicted sexually explicit conduct because they showed "[l]ewd exhibition[s] of sexual or other intimate parts." ORS 163.665(3)(f).

At the time defendant moved for a judgment of acquittal on the charges of first- and second-degree encouraging child sexual abuse, a "lewd exhibition" was understood to mean an "exhibition with the intent of stimulating the lust or sexual desires of the person who views it." *State v. Meyer*, 120 Or App 319, 326, 852 P2d 879 (1993). In the typical case involving photographic images, the focus of that element was on the intent of the photographer and whether the photographs were "taken with the intention of arousing the sexual desire of people viewing them." *State v. Mross*, 274 Or App 302, 306-07, 360 P3d 670 (2015), *rev den*, 358 Or 550 (2016); *see also State v. Navaie*, 274 Or App 739, 753, 362 P3d 710 (2015), *rev den*, 360 Or 236 (2016) ("[W]hether a photograph depicts a 'lewd exhibition' depends upon the circumstances of the photograph's creation."). In opposing defendant's motion for a judgment of acquittal, the state relied on *Meyer*, *Mross*, and *Navaie*.

Two other cases that controlled at that time elaborated on that standard. In *State v. Evans*, 178 Or App 439, 37 P3d 227 (2001), *overruled by Parra-Sanchez*, 324 Or App at 732-33, we considered whether the state had presented sufficient evidence that a "lewd exhibition" occurred when the defendant encouraged his fiancée, children, and fiancée's eight-year-old daughter to "get naked" before the family watched a movie together, volunteered to teach the eight-year-old how to dance, and then proceeded to slow-dance with the child when both were naked in such a way that his un-erect genitals "were pressed into her stomach." *Id.* at 441. No photographs were taken and the dance itself was the alleged "lewd exhibition." *Id.* at 441-42. In concluding that the evidence was sufficient for a jury to conclude that a lewd exhibition had occurred, we focused on evidence that supported an inference as to the "defendant's *scienter*"; in other words, the defendant's sexual purpose was the deciding factor in our conclusion that a lewd exhibition had occurred. *Id.* at 445-47.

Then, in *State v. Smith*, 261 Or App 665, 678, 322 P3d 1129 (2014), *overruled by Parra-Sanchez*, 324 Or App at 732-33, we cited favorably to *Evans* and defined "a lewd exhibition [as] one that would produce lust or sexual desire in the viewer, as determined from the perspective of the person charged under the statute." That case involved photographs of a child that the defendant had taken himself, and we emphasized the evidence from which a jury could infer the defendant's sexual purpose in taking the photographs. *Id.* Although the state here did not cite *Evans* or *Smith* in the trial court, those cases were nevertheless part of the controlling legal landscape at the time of trial and further focused the question of whether a "lewd exhibition" had occurred on whether the creator of the exhibition had a sexual purpose.

With that legal background in mind, we return to the facts adduced at trial. The specific images that resulted in defendant's convictions were admitted as state's Exhibits 40 and 42. The state did not admit any evidence regarding the creation of the images, and thus the only evidence before the jury was the images themselves. *See Mross*, 274

Or App at 306 (explaining that circumstantial evidence and reasonable inferences flowing from the photograph itself are sufficient to establish the "lewd exhibition" element).

Exhibit 40 is a screenshot of a photo, taken on an Android device and later saved to defendant's computer, that depicts a girl of approximately "ten to twelve years of age," standing with her legs slightly apart and eating a piece of cake outside. She is not directly facing the photographer but is instead turned slightly to the side approximately 45 degrees. The girl's plate of cake is at the center of the portrait-orientation image, which is cropped on all sides to focus on the girl and not her surroundings. The image shows the girl's body from the top of her head down to her mid-thighs, with only the very top of her head and a small portion of one arm cropped out of the image. She has evidently been swimming, as she is wearing a two-piece swimsuit and has a pair of swim goggles looped through one arm. Her hair, skin and swimsuit are visibly wet. Although her hands, arms, and plate of cake cover much of her chest area, her swim bottoms are in full view. The outline of her covered labia is visible through the fabric of the bottoms. Her eyes are focused on the plate of cake and not the photographer. A pink star and the words "Prime J" are visible in the right bottom corner of the image.

Exhibit 42 is also a screenshot of a photo, taken on an Android device and later saved to defendant's computer. It depicts a girl of approximately the same age, in a red t-shirt and a pair of short, light-blue shorts,[4] laying on her right side in grass outdoors. She is facing the photographer and has propped herself up with her right arm. The portrait-orientation image is centered on the girl rather than her surroundings, with her head on the left side of the image and the top of her thighs on the right side of the image. Although the lower portion of her legs are cropped out of the image, it is evident from her positioning that her right leg is laying on the grass while her left leg is propped up. In other words, her legs are spread open, exposing her clothed pubic area. The thin fabric of her shorts are riding up into her

_____

[4] Testimony from Special Agent Page McBeth proposed that the girl's shorts may in fact be underwear. Regardless, they provide coverage equivalent to that of a pair of short shorts.

labia, making the outline of her labia visible through her shorts. Her head is tilted slightly to her left and down while her eyes are looking up one or two feet at the photographer. She is not smiling. In the bottom right of the image, the same pink star and the text "Pr" are visible.

Additionally, the state presented the testimony of Special Agent Page McBeth, an agent with the Oregon Department of Justice who conducted a forensic examination of defendant's computer. He testified that he recognized the star and text displayed on the bottom right of Exhibits 40 and 42 as being part of a watermark.[5] In an effort to identify the full watermark, McBeth contacted the Homeland Security Child Exploitation Unit. That unit sent him a full watermark that was consistent with the partial watermarks on Exhibits 40 and 42 and that read "primejailbait.com." After receiving that tip, McBeth accessed an archived version of primejailbait.com that contained images displaying the full watermark, although neither Exhibits 40 nor 42 were among the images on the archived site. McBeth testified that, as far as he could tell from his investigation, primejailbait.com appeared to "collect[] photographs and then publish[] them on the internet." He also agreed that the presence of the partial watermark did not provide any information "about what individual actually created the photograph" or show that defendant had personally visited primejailbait.com. McBeth testified that he had viewed thousands of images of child exploitation and had not seen other images of the girls pictured in Exhibits 40 and 42.[6]

---

[5] McBeth explained that, in his experience with "child exploitation cases," watermarks were put on images "to identify the group of people who are putting these images together" and to make the images searchable online. He added that a watermark was "kind of like, uh, graffiti on a wall. It's identifying the person who puts the graffiti up." He reiterated: "The people or person who puts these watermarks in is identifying to the people that are seeking these particular photographs that, hey, these belong to me or this is mine or this is where you can get them."

[6] In defendant's third and fourth assignments of error, he contends that the trial court erred in admitting evidence of the primejailbait.com watermark and website. Specifically, defendant contends that the watermark was not authenticated in that the state did not present a *prima facie* case that the watermark was added to the images by the photographer, that the watermark was inadmissible hearsay, that the watermark and website were not relevant to the photographer's or defendant's intent, that the watermark and website should have been excluded because they were substantially more prejudicial than probative, and that those

After the above was received into evidence and the state rested its case, defendant moved for a judgment of acquittal on the basis that Exhibits 40 and 42 did not show a "lewd exhibition of sexual or other intimate parts." Defendant argued that the images were "so mainstream for what's out there in the world every day" and that "a reasonable jury could not conclude beyond a reasonable doubt that the intention of the photographer was to create lust or desire on the part of the viewer." The court denied the motion. As to Exhibits 40 and 42, the court stated:

"[O]n Exhibit 40, it has the characteristics, but it also has the Prime J. And with that testimony about what that means, which helps to ratify the intent of the creator to create an image of sexually explicit conduct[.] Once again, it's full frontal. If the child were not in that position, uh, then the image—the outline of the vagina wouldn't be clear. Um, but it appears that the photographer deliberately selected a view.

"And even with this, if you will, the right leg is slightly behind the left leg, which makes the vagina more visible. If the right leg were in front of the left, it might conceal a portion of it. But it's like maximum exposure for a girl simply in a standing pose.

"When I say maximum exposure, I'm talking about maximum exposure of the outline of her vagina.

"It also has the Prime J on it, which, uh, helps identify the purpose of the photographer.

"In Number 42 it has [Pr]. Um, again, it's a photo with a girl's legs spread. It's clearly a pose. It's not simply a girl in a field. Uh, her head is down in what may have been intended to depict a provocative pose or a come hither pose. But it's—it absolutely appears to be intended to elicit sexual urges."

errors were not harmless. Because we ultimately conclude that the state did not present legally sufficient evidence that Exhibits 40 and 42 depicted lewd exhibitions constituting sexually explicit conduct, we need not consider those asserted errors. However, we note that, even though the trial court admitted the watermark evidence *in limine* on the basis that it was probative of the photographer's sexual purpose, McBeth ultimately testified that the watermark did not provide any information "about what individual actually created the photograph." Thus, as we discuss below, the watermark evidence was not ultimately relevant for that purpose.

Defendant was subsequently convicted of the charges described above by a unanimous jury[7] and this timely appeal followed. As explained above, defendant's first and second assignments of error assign error to the trial court's denial of his motion for judgment of acquittal on Counts 1 through 4, pertaining to Exhibits 40 and 42.

Having summarized the controlling legal landscape at the time of the trial as well as the evidence presented regarding Exhibits 40 and 42, we lastly review the development in our case law that has occurred since that time. After briefing in this case was submitted, we decided *Parra-Sanchez*, 324 Or App at 712. In that case, the defendant had been convicted of five counts of using and attempting to use a child in a display of sexually explicit conduct, ORS 163.670, based on his conduct in observing his daughter "in a state of full or partial undress" while she was showering and in her bedroom after showering on various occasions. *Id.* at 714. The main issue on appeal was whether the state had presented legally sufficient evidence that a "[l]ewd exhibition of sexual or other intimate parts" as set forth in ORS 163.665(3)(f) had occurred. *Id.* at 717.

Considering the text, context, and legislative history of ORS 163.670 and ORS 163.665, we concluded that "the state must prove that the exhibition of a child's sexual or intimate parts was *objectively* lewd, not simply that defendant found it to be sexually gratifying." *Id.* at 718 (emphasis in original). Further, we explained that to be "objectively lewd," the exhibition must be "itself salacious or focused on sex. Thus, mere nudity can be encompassed in the definition of 'lewd exhibition' when it can be said to be lascivious

---

[7] Consistent with the legal standard for a "lewd exhibition" that controlled at the time of trial, the jury was instructed that a "lewd exhibition" was an "exhibition with the intent of stimulating the sexual desires of the person who views it," that "[t]he State must prove that the photographer intended the image itself to arouse the sexual desires of people who view it[,]" and that "[t]he law does not require that the subject of the photograph be nude." In a supplemental assignment of error, defendant contends that, in light of *Parra-Sanchez*, the trial court also erred in instructing the jury in that manner. In its supplemental brief, the state agrees that the instruction did not correctly state the law as it is now understood under *Parra-Sanchez*. However, as we ultimately conclude that the trial court erred in denying defendant's motion for judgment of acquittal, we need not consider the supplemental assignment of error.

or salacious—not simply nudity in the context of ordinary, daily activities such as showering or dressing." *Id.* at 721.

We then turned to our prior case law defining a "lewd exhibition," noting that *Evans* and *Smith* had treated evidence that the defendants received sexual gratification from the displays as sufficient to establish that lewd exhibitions had occurred. *Id.* at 731-32. We disavowed the suggestion those cases presented that "the objective nature of the display at issue is not a necessary consideration to determine whether there has been a 'lewd exhibition,'" and explained that our decisions in *Evans* and *Smith* "were based on a misreading of *Meyer* and * * * contrary to the plain meaning of the text of the statute." *Id.* at 732. We clarified:

> "*Meyer*'s standard was an objective one, based on the characteristics of the particular exhibition alleged to have been lewd. In *Evans* and *Smith*, we purported to apply that standard by echoing it, but instead, without analysis, we transmuted it into a new standard, holding that an exhibition of a child's sexual or other intimate parts meets the statutory definition so long as the subjective purpose of the defendant allowing or creating the display is to elicit a sexual response from the defendant or someone else. In so doing, though, we gave the statute a meaning that is not communicated to the ordinary reader by its terms, and that risks generating the constitutional problems the Oregon legislature was intentionally trying to avoid by drafting the Oregon statutes to comport with [the United States Supreme Court's decisions in [*Miller v. California*, 413 US 15, 93 S Ct 2607, 37 L Ed 2d 419 (1973), and *New York v. Ferber*, 458 US 747, 102 S Ct 3348, 73 L Ed 2d 1113 (1982)]. Under those circumstances, we decline to afford *Evans* and [*Smith*] the weight of *stare decisis*, to the extent they can be read to interpret 'lewd exhibition' to include visual perception of a nude child without any other implication of explicit sex, simply because a defendant who observed the child's exposed sexual or other intimate parts in those contexts did so for the defendant's own sexual gratification."

*Id.* at 732-33.

Finally, we summarized that

> "'lewd exhibition' means the showing of a child's sexual or other intimate parts that is itself salacious or focused on sex. Further, because of the deep ties between child pornography

on one side, and constitutional obscenity law on the other, whether something constitutes a lewd exhibition is determined by reference to objective standards. That is something that must be assessed through an examination of the characteristics of the exhibition as it would be perceived by a viewer of the display or recording, and not through an examination of the subjective intentions of the child, the intended viewer, or the person creating the display, if that person is someone other than the child or the viewer."

*Id.* at 733. We pointed to a set of six factors, described in *United States v. Dost*, 636 F Supp 828, 832 (SD Cal 1986), *aff'd sub nom United States v. Wiegand*, 812 F2d 1239 (9th Cir) *and aff'd* 813 F2d 1231 (9th Cir), *cert den*, 484 US 856 (1987), that could assist factfinders and trial courts in assessing whether a "lewd exhibition" had occurred. *Id.* at 733-34. We cautioned against treating the factors "as a checklist or as additional necessary elements of the crime," clarifying that

> "[t]he *Dost* factors are simply guideposts for a factfinder; a set of 'neutral references and considerations to avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution.' [*United States v. Rivera*, 546 F3d 245, 252 (2d Cir 2008), *cert den*, 555 US 1204 (2009)]. A factfinder does not have to find all of them before concluding that there was a lewd exhibition; conversely, the absence of one does not require an acquittal. Further, some of the factors may not be relevant or useful in any given case. What weight should be given to any specific factor will depend ultimately on the circumstances of the trial."

*Id.* at 735. We reiterated that the overriding purpose and benefit of the factors is to "focus the inquiry on what is presented in the depiction itself—not the defendant's subjective state of mind." *Id.* at 736. Returning to the facts of the case and applying the correct legal standard, we concluded that the child's conduct—showering and dressing in "various states of nudity"—did not meet the standard for a "lewd exhibition." *Id.* at 736-37.[8] We discuss the *Dost* factors,

---

[8] We note that the trial court's decision to deny the motion for judgment of acquittal in the instant case predated our decision in *Parra-Sanchez*. The court understandably ruled based on the law in effect at the time it ruled. On appeal, however, we must apply the current law and not the law in effect at the time that the trial court ruled. *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).

as well as their application to the facts here, later in this opinion.

After we decided *Parra-Sanchez*, defendant submitted a memorandum of additional authorities to us, asserting that, as in *Parra-Sanchez*, Exhibits 40 and 42 did not meet the standard for a "lewd exhibition":

> "The girls were not costumed for seduction or posed in a manner that was sexually exploitive or connoted sexual readiness. The girls' acts of standing to have a picture tak[en] (Exhibit 40) or laying in the grass (Exhibit 42) were age appropriate. The mere visibility of the outline of their labia through their swimsuit and short bottoms while engaging in ordinary activities—like playing outside—is not a fact sufficient to make their conduct 'lascivious or salacious.'"

At oral argument, the state conceded that *Parra-Sanchez* "clearly makes it more difficult for the state." Nevertheless, the state posited that the presence of the partial watermark on the images could be inferential evidence that primejailbait.com was the creator or source of the images, which in turn could be inferential evidence that the images were intended or designed to elicit a sexual response in the viewer, which, as we will discuss, is the consideration raised by the sixth *Dost* factor.

With that background in mind, we return to defendant's contention on appeal that the trial court erred in denying his motion for judgment of acquittal on Counts 1 through 4, because Exhibits 40 and 42 did not depict a "lewd exhibition of sexual or other intimate parts" and therefore did not show "sexually explicit conduct involving a child" as required under ORS 163.684 and ORS 163.686. Considering Exhibits 40 and 42 in light of our decision in *Parra-Sanchez* and the *Dost* factors, we agree.

As explained above, *Parra-Sanchez* clarified that for an image to constitute a "lewd exhibition of sexual or other intimate parts," the image must be "objectively lewd" or "itself salacious or focused on sex." 324 Or App at 718, 721. Further, whether an image is objectively lewd cannot be determined solely on the sexual purpose of the creator or photographer. *See id.* at 732-33. Instead, that determination

must be made "through an examination of the characteristics of the exhibition as it would be perceived by a viewer of the display or recording, and not through an examination of the subjective intentions of the child, the intended viewer, or the person creating the display." *Id.* at 733. In conducting that examination, we consider the *Dost* factors:

> "'1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.'"

*Id.* at 734 (quoting *Dost*, 636 F Supp at 832). Those considerations are not "a checklist or *** additional necessary elements of the crime," but are "simply guideposts" to help "focus the inquiry on what is presented in the depiction itself—not the defendant's subjective state of mind." *Id.* at 735-36.

We apply that standard, along with the *Dost* considerations, to the images at issue in this case, beginning with Exhibit 40, the image of the girl in the swimsuit eating cake. First, the girl is in a swimsuit and her pubic area and breasts are fully covered. Although the girl is the focal point of the image, the image is not focused on her genitalia or pubic area and the girl's plate of cake is at the center of the image. Second, the setting of the image is not sexually suggestive. The girl is standing outside in what appears to be a backyard pool area rather than a place generally associated with sexual activity, such as a bedroom. She is standing and eating cake, which is not a pose generally associated with sexual activity. Although the position in which she is standing may have exposed more of the outline of her labia than if she had been alternatively standing with her feet together, that alone is not sufficient for us to conclude that she is posed in a manner that is generally associated with sexual activity. Third, the child is not depicted in an unnatural pose or

in inappropriate attire for her age. Indeed, the photo appears to have been a candid one, capturing a child who is engaged in regular behavior for her age. Again, even if her stance is such that the outline of her covered labia is somewhat more pronounced than it would be in other stances, that alone does not render her pose unnatural for her age. Although the child is only partially clothed, her dress, a swimsuit, is appropriate for her age and activities. Additionally, the image does not suggest sexual coyness or a willingness to engage in sexual activity. The child is not looking at the camera and nothing about her pose or demeanor suggests such coyness or willingness.

Finally, the sixth *Dost* factor, whether the visual depiction is intended or designed to elicit a sexual response in the viewer, is at most ambiguous in this case. While it is possible that the photo was taken to elicit a sexual response in a certain type of viewer, it is just as likely that the image was taken by a parent documenting a birthday party or other festivities. In other words, on this record, we can only speculate as to the intentions of the photographer, the creator of the image. Further, we disagree with the state's contention that the presence of the partial "Prime J" watermark supports an inference that the image was intended or designed to elicit a sexual response in the viewer. Although the trial court admitted the watermark evidence in part because "[t]he fact that it ends up on a place called Prime Jailbait is probative [of] whether or not the photographer intended it to be *** sexual," McBeth ultimately testified that the presence of the partial watermark did not provide any information "about what individual actually created the photograph." Thus, the evidence did not ultimately establish any connection between the original photographer and primejailbait.com, meaning the presence of the partial "Prime J" watermark cannot support the inference that the photo was intended or designed to elicit a sexual response in the viewer—even if the presence of the watermark might indicate that at least *someone* believed that the image may be of interest to those seeking child pornography.

Considering those objective elements of Exhibit 40, the image is not "objectively lewd" or "itself salacious or

focused on sex." *Parra-Sanchez*, 324 Or App at 718, 721. As a result, the state's evidence was insufficient to prove that Exhibit 40 showed sexually explicit conduct involving a child, and the trial court erred in denying defendant's motion for a judgment of acquittal on Counts 1 and 2 relating to that image.

Next, we consider Exhibit 42, the image of the girl in the red shirt and blue shorts. The focal point of this image is also not the child's genitalia or pubic area; although the child is the focus of the image, her covered pubic area is just barely in frame and is covered by a shadow. The setting, a grass lawn, is also not sexually suggestive. The child is fully clothed in a t-shirt and shorts, which is appropriate attire for a child of her age. Although the child is posed in a manner that could be sexually suggestive under some circumstances, it is also not an unnatural pose for a child her age or one that is generally associated with sexual activity. The child's expression, which the trial court described as a "come hither" look, combined with her physical positioning, could suggest sexual coyness. Similarly, those elements of the photograph could support an inference that the photographer intended or designed the image to elicit a sexual response in a certain type of viewer.[9] However, on balance, those slightly suggestive elements of the image are insufficient to render the image "objectively lewd" or "itself salacious or focused on sex." Notably, the child's covered pubic area is not the focal point of the image and is in fact barely in frame, and the child is fully clothed in appropriate attire in a nonsexual setting, engaged in behavior that is not inherently sexual or inappropriate for her age. For those reasons, we conclude that Exhibit 42 does not depict a "lewd exhibition of sexual or intimate parts" as a matter of law, and the state's evidence was therefore insufficient to establish that Exhibit 42 depicted "sexually explicit conduct involving a child." As a result, the trial court erred in denying defendant's motion for a judgment of acquittal on Counts 3 and 4.

Because the trial court erred in denying defendant's motion for judgment of acquittal on Counts 1 through 4, we

---

[9] As with Exhibit 40, the partial "Pr" watermark does not support an inference that the *photographer* or the creator of the image intended or designed the image to elicit a sexual response in the viewer, for the reasons explained above.

reverse those convictions and remand the case for resentencing on the bribe giving count.

Convictions on Counts 1 through 4 reversed; remanded for resentencing; otherwise affirmed.